## Charles S. Burch, Receiver,

*v.*

## James J. West et al.

*Filed at Ottawa October 31, 1890.*

1. Insolvent debtors—*what will constitute a general assignment—and whether the particular transaction is in fraud of the statute.* In considering a transaction between a debtor and a portion of his creditors, it was said, to hold that an insolvent debtor, who, at the demand of importunate creditors, gives judgment notes for less than one-third of what his property will sell for in cash and at forced sale, thereby makes a voluntary assignment of all his property for the benefit of his creditors, notwithstanding the fact he expects and intends to keep on with his business, and gives such notes upon the supposition it will the better enable him to proceed therewith, would be giving an interpretation to the statute not warranted by its language. So such a transaction is not to be regarded as a fraud upon the statute.

2. Corporate officers—*power to give judgment notes.* Power in the president and secretary of a private corporation to give judgment notes to its creditors may be shown by facts and circumstances, such as the frequent giving of such notes, and the subsequent ratification by the board of directors.

3. Chancery—*equitable relief against judgment at law—upon what grounds.* Where judgments by confession are based upon full and adequate consideration, and there is nothing to impeach their justice, a court of equity will not grant relief against them on the ground of want of authority to execute the power of attorney under which the

confession was made. The remedy for such a defect is by motion in the court in which the judgment is entered.

4. A court of equity has no jurisdiction to enjoin a judgment entered in a court of law, merely because the process of that court was not served on the defendant. Equity will only interfere where it is further shown that the judgment is inequitable and unjust.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

Mr. MATTHEW P. BRADY, for the appellant:

Section 13 of the act concerning voluntary assignments prohibits all preferences between creditors. *Freund* v. *Haegerman,* 26 Fed. Rep. 812; *Preston* v. *Spaulding,* 120 Ill. 208; *Bank* v. *Rehm,* 126 id. 461.

After a corporation has become insolvent, its directors are under a positive obligation, as *quasi* trustees, to manage the assets with strict regard to the equitable rights of creditors. 2 Morawetz on Corp. sec. 795; *Bank* v. *St. John,* 25 Ala. 566; *Freeman* v. *Stine,* 15 Phil. 37; *Irons* v. *Bank,* 6 Biss. 301; *Atkins* v. *Saxtus,* 77 N. Y. 202; Boone on Corp. sec. 139.

As to the power of the president of a private corporation, see *Stokes* v. *Pottery Co.* 6 Am. and Eng. Corp. Cases, 240; Taylor on Corp. sec. 236; *Hoyt* v. *Thompson,* 5 N. Y. 320; *Morgan County* v. *Thomas,* 76 Ill. 120; Rev. Stat. chap. 32, sec. 6.

Directors can not, without express authority or by necessary implication, delegate to others any portion of their power requiring the exercise of discretion or judgment, or which it is intended they shall exercise personally. Boone on Corp. sec. 141, and cases in notes 8-11; *Flagstaff M. Co.* v. *Patrick,* 2 Utah, 304; *Davis* v. *Flagstaff M. Co.* id. 74; *Hyde* v. *Joyes,* 2 Am. Corp. Cases, 353; Green's Brice's Ultra Vires, 491, 492; *Gillis* v. *Bailey,* 21 N. H. 149; *Insurance Co.* v. *Chase,* 56 id. 341; *In re Leed's Banking Co.* L. R. 1 Ch. App. 563; *Bank Comrs.* v. *Bank of Buffalo,* 6 Paige, 497; *Percy* v. *Mil-*

*lardon,* 3 La. 468; *Glidden* v. *Hopkins,* 47 Ill. 525; *Silver Hook Road* v. *Greene,* 00 R. I. 187.

Messrs. Weigley, Bulkley & Gray, for the appellees.

A corporation may give preferences to its creditors to the same extent that an individual may, there being no positive law to the contrary, even if by so doing it exhausts the whole of its available assets. 2 Morawetz on Corp. sec. 802; *Reichwald* v. *Hotel Co.* 106 Ill. 439; *Stratton* v. *Allen,* 16 N. J. Eq. 229; *Buel* v. *Buckingham,* 16 Iowa, 284; *Smith* v. *Lansing,* 22 N. Y. 521.

A corporation has power to give judgment notes. *Millard* v. *Female Academy,* 8 Bradw. 341; *White* v. *Crow,* 17 Fed. Rep. 98.

A warrant of attorney to confess judgment is a familiar common law security, and the entry of judgment by *cognovit* thereunder is a proceeding according to the course of the common law, which courts have ever entertained in the ordinary exercise of their authority as courts of general jurisdiction. *Bush* v. *Hanson,* 70 Ill. 480; *Chamberlain* v. *Mining Co.* 20 Mo. 97; *Miller Bros.* v. *Bank,* 2 Ore. 291.

The same presumptions obtain in favor of a judgment entered by confession upon warrant of attorney, as to the authority and jurisdiction of the court to enter the same, as in the case of other ordinary judgments of superior courts of general jurisdiction. *Bush* v. *Hanson,* 70 Ill. 480; *Osgood* v. *Blackmore,* 59 id. 261.

A judgment may be confessed on a note before it is due, if the warrant of attorney attached thereto authorizes it. *Adam* v. *Arnold,* 86 Ill. 185; *Sherman* v. *Baddely,* 11 id. 622; *Towle* v. *Gonter,* 5 Bradw. 409; *Cummins* v. *Holmes,* 11 id. 158.

The fact that a judgment is confessed for too much does not render the same void. The defendant may have the error corrected, but a stranger has no right to interfere. *Adam* v. *Arnold,* 86 Ill. 185.

The authority of officers of a corporation to bind it may be presumed from custom. *Mitchell* v. *Deeds,* 49 Ill. 417; *Smith* v. *Smith,* 62 id. 493; *Building Society* v. *Crowell,* 65 id. 453; *Sawyer* v. *Cox,* 63 id. 134.

Under the statute, (Rev. Stat. chap. 69, sec. 7,) only so much of any judgment at law shall be enjoined as the complainant shall show himself equitably not bound to pay, and so much as shall be sufficient to cover costs. *Sprague* v. *Lux,* 12 Bradw. 271.

The board of directors of a corporation may subsequently ratify, adopt or approve any acts of its officers, agents, or even strangers, which it could have originally authorized, and if it does so, it is equivalent to a prior authorization. *Wood* v. *Wheelen,* 93 Ill. 164; *Reichwald* v. *Hotel Co.* 106 id. 440; *Thomas* v. *Mueller,* id. 36; *Town of Bruce* v. *Dickey,* 116 id. 533; *Connett* v. *City of Chicago,* 114 id. 239.

The board of directors are vested by law with all corporate powers in respect to the management of the corporation, and hence need not be empowered by the stockholders before authorizing the giving of judgment notes. Rev. Stat. chap. 32, sec. 6; *Wood* v. *Wheelen,* 93 Ill. 153.

Messrs. FRANK J. SMITH & HELMER, also for the appellees.

Mr. J. A. SLEEPER, for the appellee the Union Trust Co.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On the 27th day of October, 1887, James J. West, one of the appellees herein, understanding himself to be under obligations to protect the interests of the Union Trust Company, the Kalamazoo Paper Company, the Chicago Paper Company and the Western Publishing House, in respect to the matter of their claims against the J. L. Regan Printing Company, a corporation organized under the laws of the State of Illinois, called upon the president and secretary of said printing com-

pany, and induced them to execute and deliver to him three judgment notes of said corporation, each authorizing the entry of judgment thereon at any time, either before or after the maturity thereof. Two of said notes were made payable to the Union Trust Company, and one of them was for $5440.06, and the other for $4881.45, and the third note was for $9375.98, and was made payable to West himself, and was intended to cover the claim of the Chicago Paper Company for $3212.46, the claim of the Kalamazoo Paper Company for $2000, and the claim of the Western Publishing House for $4163.52. The aggregate of the three notes executed at that date was $19,697.49. At and prior to that time said West held and owned six similar judgment notes given by the J. L. Regan Printing Company, and the aggregate amount of principal, and interest thereon to that date, was $35,344.74; and the Union Trust Company also held two other judgment notes of the printing company, and the principal and interest thereof to that date was $5400.

Shortly after the procurement of the three first mentioned judgment notes, and on the same day, judgments were rendered, by confession, on all the above mentioned judgment notes, in the Superior Court of Cook county, against the said J. L. Regan Printing Company. The aggregate of the judgments in favor of West, in his own right, was the aforesaid sum of $35,344.74, the aggregate of the judgments in favor of the Union Trust Company was $15,721.51, and the judgment in the name of West, but for the benefit of the two paper companies and the publishing house, was $9375.98, making $60,442.23 in all. On the same 27th day of October, 1887, executions were sued out on said judgments, placed in the hands of the sheriff of Cook county, and levied upon all the assets and property of the J. L. Regan Printing Company, except the book accounts and choses in action. On the same day, but after the levy aforesaid, the J. W. Butler Paper Company sued out of the said Superior Court a writ of attachment

for the sum of $1426.33, which was also levied upon the said property. On the next day, October 28, 1887, two judgments were rendered in the same court, upon judgment notes, by confession, in favor of Carleton Prouty, and against the printing company, one for $1548.04, and the other for $2308.51, and executions were immediately issued thereon, and levied on the same property.

On November 7, 1887, the circuit court of Cook county, in a suit in equity brought by certain creditors of the J. L. Regan Printing Company, on behalf of themselves and all other creditors, entered a decree dissolving the corporation, and on November 10, following, Charles S. Burch, the now appellant, was appointed receiver of the assets of said printing company. A few days thereafter the receiver filed in said circuit court this bill, for the purpose of enjoining a sale of the assets of the J. L. Regan Printing Company by the sheriff, under the aforesaid executions, and praying that each of said executions be quashed, and that the judgments on which they had issued be set aside. The grounds upon which it was claimed in the bill that the relief therein sought should be granted, are thus summarized in the brief and argument of appellant:

"Because the officers who executed the notes and warrants of attorney had no authority to execute the same; that the power to confess judgment against the corporation at any time after the giving of the notes, and before the maturity of the same, was unusual and extraordinary, and could not be conferred by the officers, who were only authorized to transact the ordinary business of the company; that when the several judgment notes obtained by West were given, the company was, to his knowledge, insolvent, being largely indebted to a great number of persons and corporations, whose just claims it was unable to pay; that the judgment notes were obtained by West with intent to immediately enter up judgments upon the same before the maturity thereof, ruin the business of the company, acquire the ownership of its assets when forced on

the market by the sheriff, at a sum much less than their value, and fraudulently prevent the company's *bona fide* creditors from enforcing or collecting their just demands; that all the property of the company was seized by the sheriff under the executions issued upon the said judgments, and in consequence its general creditors have been prevented from collecting their demands; that the board of directors had no authority to empower the president and secretary, or either of them, by any resolution, to bind the corporation by such a warrant of attorney; and that the judgment notes were not based on a good or sufficient consideration."

On November 16, 1887, an order was entered that the sheriff, upon the receipt by him of a bond for $65,000, turn over to the receiver all the property of the corporation in his possession, and that all liens and rights of all parties upon the said property should be preserved until the further order of the court.

Answers were filed by the several defendants, to the bill of complaint, and replications to such answers.

Upon the hearing, the circuit court decreed in favor of the validity of the claims and judgments of the several judgment creditors, and that their execution liens, and the lien of the attaching creditor, the J. W. Butler Paper Company, were prior and superior to the rights of the receiver, and should be first paid out of the assets surrendered by the sheriff. The court, however, first reduced the judgment for $9375.98, wherein West was trustee for the Western Publishing House and two other corporations, in the sum of $3463.52, for work done for said publishing house during the month of October, 1887, and for which no bill had been rendered at the time of the entry of said judgment; and also reduced the Carleton Prouty judgments very considerably, on account of payments received on collaterals held, attorney's fees improperly included in the judgments, etc. The court found, by its decree, that the prior liens amounted to $61,233.96, and that the receiver had received from the proceeds of the property surrendered by the

sheriff, more than the sum of $61,233.96,—the amount of said liens. Upon appeal to the Appellate Court for the First District the decree was affirmed, and the cause was then brought here by this further appeal.

It was urged in the Appellate Court, apparently for the first time, that the judgment in favor of West for $9375.98, and the judgments in favor of the trust company for $5440.06 and $4881.45, respectively, were preferences in fraud of the act concerning voluntary assignments, and therefore void. Neither the facts alleged in the bill nor the facts established at the hearing show either that there was a voluntary assignment or a case within section 13 of the Voluntary Assignment act. In *Hide and Leather Nat. Bank* v. *Rehm*, 126 Ill. 461, the debtor, at the time he gave the judgment notes, intended making a general assignment, and actually made such assignment the next morning; and it was held, that as the judgments were confessed for the purpose of preferring the plaintiffs therein, they were void, and that the holders of the judgments acquired no lien in preference of the general creditors. But in *Hanford Oil Co.* v. *First Nat. Bank*, 126 Ill. 584, it was expressly said: "Notwithstanding the Voluntary Assignment act, a debtor, though insolvent, may still secure, by mortgage or confession of judgment, or otherwise, a *bona fide* indebtedness, if done in good faith, and not in contemplation of making an assignment under said act." In the case at bar, the corporation was undoubtedly insolvent, and this was probably known to both West and to the officers and directors of the company; but, then, it is equally clear that said officers and directors did not contemplate that the corporation would make a voluntary assignment of its property, and that no such assignment was in fact made. On the contrary, it is manifest that those in charge of the corporate affairs were using every endeavor to tide over the indebtedness of the corporation, with a view of an improvement of its affairs, and that the execution of the three notes in question, upon demand made by one of its

largest creditors, was supposed by them to be in furtherance of that object; and it affirmatively appears from the evidence of the witnesses introduced by appellant, that had the officers known that it was intended to enter up judgments on the notes, such notes would not have been given.

Without here determining what is a voluntary assignment, within the purview of the Voluntary Assignment act, it is very evident that there was not in this case such an assignment. The property upon which the executions were levied realized at forced sale some amount in excess of $61,233.96, but how much in excess does not appear in this record; nor does it appear therefrom what was the amount or value of the book accounts and choses in action possessed by the corporation. As we have before seen, the aggregate of the judgment notes executed on the 27th day of October, and the execution of which seems to be claimed was in effect a voluntary assignment, within the act, was only $19,697.49. To hold that an insolvent debtor, who, at the demand of importunate creditors, gives judgment notes for less than one-third of what his property will sell for in cash and at forced sale, thereby makes a voluntary assignment of all his property for the benefit of his creditors, notwithstanding the fact he expects and intends to keep on with his business, and gives such notes upon the supposition it will the better enable him to proceed therewith, would be giving an interpretation to the statute that is wholly unwarranted by its language. We think there is no merit in the claim made by appellant, that the execution of the three notes made on October 27, 1887, was a voluntary assignment, or in fraud of the Assignment act.

It is claimed in respect to all of the judgments entered by confession against the J. L. Regan Printing Company, that they are invalid, because rendered upon warrants of attorney executed by officers of the corporation without authority. Owing to differences in the circumstances attendant upon the large number of warrants of attorney involved, quite a variety

of questions arise upon this branch of the case. In view of the corporate powers vested in the company by the general law under which it was organized; in view of the fact the act provided that the corporate powers should be exercised by the board of directors; in view of provisions contained in the by-laws of the company; in view of resolutions adopted by the board of directors approving the action of the president and secretary of the company in executing notes with warrants of attorney, and authorizing them to execute judgment notes; in view of the fact that the president and secretary of the company, during the whole term of its corporate existence, executed, in behalf of the company, judgment notes similar to those at issue in this case, and that this was known to the directors, and they made no objection thereto; and in view of the fact, shown by the evidence, that it is, and for many years has been, the general, well established and practically universal custom of banks and bankers in the city of Chicago to take notes from their customers for money loaned them, containing powers of attorney to confess judgments, similar to those found in this record, we are inclined to think that authority to execute all of the warrants of attorney here in question sufficiently appears. But be this as it may, and even if we assume that the officers of the company were not authorized to execute the powers of attorney, yet appellant can not now avail himself of the objection.

All of the judgments were based upon full, adequate and valuable considerations, and nothing appears in the record to charge any of the judgment creditors with fraud, or to show that any of the judgments were collusively confessed when no indebtedness, or no sufficient indebtedness, existed. Nothing appears in the record to impeach the justice of the judgments. The statute (Rev. Stat. 1874, chap. 69, sec. 7,) provides, that only so much of any judgment at law shall be enjoined as the complainant shall show himself equitably not bound to pay, etc. At most, the defects in the judgments were the want of a

service of process. The remedy for such defects was in the law court which rendered the judgments, or by writ of error. A court of equity has no jurisdiction to enjoin a judgment entered in a law court, merely because the process of that court was not served on the defendant, and will only interfere when it is further shown that the judgment is inequitable and unjust. (*Stokes* v. *Knan*, 11 Wis. 391; *Blackburn* v. *Bell*, 91 Ill. 434; *Thomas* v. *Mueller*, 106 id. 36; *Colson* v. *Leitch*, 110 id. 504.) In this case, there being no injustice and no fraud in the judgments, neither the printing company, nor its creditors, nor the receiver, have any right to relief in a court of equity.

Some minor objections are urged to the decree, but they do not seem to require special mention. Suffice it to say, that we think the assignments of error in respect thereto are not well assigned.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*