COMMERCIAL NATIONAL BANK OF CHICAGO AND THE
. KALAMAZOO PAPER COMPANY

v.

CHARLES S. BURCH, RECEIVER.

*Creditor's Bill—Insolvency—Corporations—Officers.*

1. Every successive assignee of a chose in action takes it subject to the equities existing between the original assignor and his immediate assignee.

2. The directors of an insolvent corporation are trustees of its funds for creditors thereof; they may not give them away or use them to exonerate themselves to the injury of other creditors.

3. A resolution of the directors of a corporation providing that "the president and secretary of this company are authorized to execute judgment notes, chattel mortgages, bills of sale or other instruments, in their judg-

ment necessary to the financial interests of this company," is authority for the assignment of the book accounts thereof, by them.

4.   The purchase from one of its stockholders of its own stock by a corporation, through the exchange of its property of equal value, though made in good faith and without any element of fraud, there not being anything in the apparent condition of the company to interfere with the making of the exchange, will not be allowed where it injuriously affects a creditor of the company, even though the fact of the indebtedness was not at the time established or known to the stockholder.   .

5.   The fact that the directors of an insolvent corporation may not prefer themselves, and may not of their own motion prefer individual creditors after the insolvency of the corporation is ascertained, and it is determined that the objects of its creation are no longer to be pursued, does not prevent a diligent creditor from pursuing all legitimate means to secure or satisfy from the assets of the corporation his particular debt.

6.   In the case presented, this court holds that the bank in question receiving a note named before maturity made it an innocent holder for value, but that the book accounts were mere choses in action; that it holds the note relieved from all defenses, but held the book accounts subject to all defenses, and therefore subject to the claims of the creditors of the corporation, and that said bank may prove up its claim upon said note, and share *pro rata* in the assets in the hands of the receiver.

7.   This court likewise holds that it was error to dismiss the intervening petition of the paper company named, and reverses the order so dismissing, with directions to pay over to such company so much of the proceeds of book accounts in the hands of the receiver as shall be necessary to satisfy its demand.

[Opinion filed May 5, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

Messrs. WEIGLEY, BULKLEY & GRAY, for appellants.

An innocent purchaser or pledgee of a negotiable promissory note who takes the same before maturity, obtains a good title thereto and may recover thereon.   McIntyre v. Yates, 104 Ill. 500; Mix v. National Bank of Bloomington, 91 Ill. 23.

The Commercial National Bank, therefore, when it obtained the $13,000 note from James J. West as collateral security for a *bona fide* indebtedness of West to the bank, having obtained the same before maturity and without notice of any of the equities existing against the note in the hands of West,

obtained a good title thereto and the right to enforce payment of the same against the J. L. Regan Printing Company. The Commercial National Bank also obtained a good title to the accounts and proceeds thereof as against the J. L. Regan Printing Company and its receiver, subject only to the equities existing between the J. L. Regan Printing Company and the original obligors, but free and clear from any equities existing in favor of the J. L. Regan Printing Company, its receiver or its creditors, as against James J. West, the original pledgee. The J. L. Regan Printing Company having placed in James J. West the *indicia* of absolute ownership of the accounts, the bank received the same from him free from all claims of the J. L. Regan Printing Company or those claiming under or through it. The company is estopped by its acts from setting up any defense thereto. Coombes v. Chandler, 33 O. St. 178; McNeil v. Bank, 46 N. Y. 325; Moore v. Bank, 55 N. Y. 41; Otis, Adm'r, v. Gardner, 105 Ill. 436; Olds v. Cummings, 31 Ill. 188; Mott v. Clark, 9 Pa. St. 399; Weyh v. Boylan, 85 N. Y. 394; Horn v. Call, 51 N. H. 287; Clark v. Roberts, 25 Hun, 86; Cowdry v. Vanderberg, 101 U. S. 572; Armour v. M. C. R. R. Co., 65 N. Y. 111; Colbrook on Collateral Security, Sec. 432 to 437 inclusive.

Under these authorities, the bank obtained a good title to the accounts as against the receiver, regardless of any equities existing as against the accounts in the hands of West.

The consideration of the assignment of the accounts to James J. West for and on behalf of the Kalamazoo Paper Company, not being denied but admitted, the Kalamazoo Paper Company obtained a good title to the accounts and proceeds thereof for the purpose of paying the indebtedness admitted by the Regan Company to it of $2,576.27, and neither the receiver nor the creditors can attack its title thereto. The fraud which a creditor has a right to attack, is one which will injure himself. There being a *bona fide* existing indebtedness of the company to the Kalamazoo Paper Company, the printing company had a right to pay it by the assignment of accounts or in any other manner, and the paying of the account or giving to the Kalamazoo Paper Com-

pany a preference, is not such a fraud as other creditors can attack.    Thomas v. Mueller et al., 106 Ill. 36.

A party taking collateral security, unless otherwise expressly stipulated between the parties, holds the same, and each and every part thereof, as security for the whole debt and all debts contracted while holding such collateral.    Baldwin v. Bradley, 69 Ill. 32; Henry v. Eddy, 34 Ill. 508.

The Commercial National Bank, therefore, had the right to hold the $13,000 note and the security attending it, together with the other collaterals pledged at the same time as collateral for the indebtedness contracted, and before then owing by West to the bank, amounting in all to $43,000.

When the name of the president of a company appears to an instrument purporting to bind the company, the law will presume it was executed by sufficient authority from the body. Sawyer v. Cox, 63 Ill. 130; Phillips v. Coffee, 17 Ill. 153; Millard v. St. Francis Xavier Academy, 8 Ill. App. 341.

The document assigning the accounts to James J. West, having been executed by the president of the J. L. Regan Printing Company, with its corporate seal attached, attested by its secretary, it was not incumbent upon either West or the Commercial National Bank to inquire further regarding the authority of its officers to execute that document.    They were strangers to the company and not bound to know its by-laws. Wait et al. v. Smith, 92 Ill. 385.

But, aside from this, there appeared on the record book of the corporation a resolution authorizing the execution of such a document, purporting to have been regularly passed September 24, 1887.    The directors and officers of the company were chargeable with knowledge of what appeared upon the corporate records of the company.    First Nat. Bank v. Tisdall, 84 N. Y. 655.

And the secretary of the company, having informed James J. West that such resolution had been passed, the company are estopped to deny its record, and could not set up in defense that no such resolution was in fact passed.    Whiting v. Wellington, 10 Fed. Rep. 810; Bank v. Flour Co., 41 O. St. 552; County of Warren v. Marcy, 97 U. S. 96.

Again, the president of the J. L. Regan Printing Company had been accustomed to execute judgment notes, chattel mortgages and other documents without express authority of the board of directors ever since the organization of the company. West and the bank, therefore, had the right to rely upon the custom of that company as being authorized by the board of directors. Smith v. Smith et al., 62 Ill. 493; Chi. Building Society v. Crowell, 65 Ill. 453.

As a general rule, the president of a corporation has power to bind it within the scope of its powers. Union Mut. Life Ins. Co. v. White, 106 Ill. 67; Beers v. Phenix G. Co., 14 Barb. 358; Angell & Ames on Corporations, 11th Ed., Sec. 297.

The board of directors of a corporation may delegate discretionary power to a committee of its own members or to officers of the company elected by it. Hoyt v. Thompson's Ex., 19 N. Y. 207; Burrill v. Nahant Bank, 2 Metc. (Mass.) 163; Waterman on Corporations, 365.

The authority, therefore, of James L. Regan, as president, and John H. Goessele, as secretary, to assign the accounts of the company, to either pay or secure the debts of the company, would seem to be amply sufficient.

Corporations may prefer creditors the same as individuals may. Reichwald v. Commercial Hotel Co., 106 Ill. 438; Buell v. Buckingham, 16 Ia. 284.

The authority of the J. L. Regan Printing Company, therefore, to prefer the Kalamazoo Paper Company, and the indebtedness represented by the $13,000 note, can not be questioned, and if the authority of the company can not be questioned, the authority of its officers, under the facts and the law, would seem to be amply sufficient.

A corporation has power to purchase its own stock, if it does not work to the injury of creditors. Morawetz on Private Corporations, Sec. 783; Klapp v. Peterson, 104 Ill. 26; Frazer v. Ritchie, 8 Ill. App. 354.

The corporation having power to purchase its stock when solvent, the contract of purchase can not be absolutely void. It is only voidable at the instance of creditors. The $13,000 note, given for the purchase of stock, having passed into the

hands of an innocent holder, became as valid and binding an obligation upon the company as any of its other obligations, and creditors of the company are in no better position to attack the same than if the company had reduced its assets by the sum of $13,000 and paid that amount in money for the stock. In that event the creditors would be compelled to follow the money into the hands of the stockholder from whom it was purchased—Levi W. Yaggy. They have the same right now, and this is their only remedy.

The receiver of an insolvent corporation, for the purpose of litigation, stands in the shoes of the corporation, and has the same rights and remedies as the corporation and no other, except in cases of fraud where the corporation would be estopped by reason of being a participant therein; the receiver is not estopped. High on Receivers, Sec. 315; Curtis v. Leavitt, 15 N. Y. 44.

Messrs. CRATTY BROS. & ASHCRAFT and MATHEW P. BRADY, for appellee.

MORAN, P. J. The J. L. Regan Printing Company was a corporation organized under the laws of Illinois for carrying on the printing business in the city of Chicago, and it became indebted to one James J. West, who had a series of transactions with said company, and said West on the 27th of October, 1887, held the judgment notes of said company for something over $40,000, the principal amount of which was for money loaned and advanced by said West to said printing company.

Some time prior to said 27th day of October, 1887, said West had purchased from one Yaggy 130 shares of the stock of the said J. L. Regan Printing Company, and had paid therefor, as he claimed, about $13,000. Said West claims, and it is probable from the evidence, that the understanding between West and the officers of the said J. L. Regan Printing Company was that said West should purchase said stock for the company.

After the purchase by said West of said stock, he transferred it to the company and procured from the company the

said company's judgment note for the sum of $13,000. The said J. L. Regan Printing Company was indebted to the Kalamazoo Paper Company in the sum of $2,576, and West was the agent and representative of the said Kalamazoo Paper Company, for the purpose of collecting its indebtedness from the said J. L. Regan Printing Company.

Upon the said 27th day of October, West procured from the J. L. Regan Printing Company a legal assignment of all the book accounts whatever due and owing to the said J. L. Regan Printing Company, and which amounted on their face to something over $30,000, and on the same day said West had entered up against the said J. L. Regan Printing Company judgments on judgment notes held by him in about the sum of $45,000, the $13,000 judgment note given to West for the stock not being included therein. Immediately after procuring the assignment of the book accounts from the printing company, West got possession of the books and delivered them to the Commercial National Bank, together with the $13,000 note which he held against the J. L. Regan Printing Company as collateral security for a debt of $25,000 which he about that time contracted to the bank, the bank loaning him that amount of money. Under the execution that had been issued on the judgments which West had procured to be entered against the J. L. Regan Printing Company, all the plant and property of the company were seized by the sheriff. In November, 1887, the bill in this case was filed by a simple contract creditor, against the J. L. Regan Printing Company, James J. West, the Union Trust Company, J. L. Regan, C. O. Owen, Canute R. Matson and others, alleging the insolvency of the said printing company and asking for the appointment of a receiver. By an order of court the book accounts turned over to the Commercial National Bank by West, were directed to be turned over to the receiver to collect the same.

In January, 1888, an intervening petition was filed in said suit by the Commercial National Bank and also one by the Kalamazoo Paper Company, the bank claiming the right to have the book accounts applied to the payment of the $13,000

note held by it against the J. L. Regan Printing Company, and the Kalamazoo Paper Company claiming to have said book account applied to the discharge of its debt. Upon a hearing of these petitions they were both dismissed for want of equity, and the order dismissing the same is brought to this court for review.

The order dismissing the petitions is sought to be upheld upon the ground that the president and secretary of the J. L. Regan Printing Company, who made the assignment in question, did not have power or authority to execute the same, and that therefore the assignment of the book accounts was void. The directors of the J. L. Regan Printing Company before the execution of said assignment to West passed the following resolution:

"The president and secretary of this company are authorized to hereafter execute judgment notes, chattel mortgages, bills of sale or other instruments in their judgment necessary to the financial interests of this company."

Proceeding under the authority of that resolution the officers of the company executed the various judgment notes to West, and also the assignment of the book accounts heretofore mentioned. We are inclined to the view that the officers of the company had under said resolution, legal power and authority to execute the assignment in question; but we are of opinion that the decree dismissing the petition of the Commercial National Bank is to be sustained, but upon another ground.

The sole consideration of the $13,000 note, to satisfy which the bank now seeks to have the book accounts which were assigned to West, and by him to the bank, applied, was the purchase of a portion of the capital stock of the printing company. The financial condition of the printing company at the time that West purchased the said shares of stock was not such as would, under the law as announced by our Supreme Court, permit it to thus diminish its capital stock and impair the rights of its creditors, and that condition was known to West. The purchase of the stock by West from Yaggy made West a stockholder of the company, and he, knowing its condition, could not sell that stock to the com-

pany in such a manner as to hold property received from the company in consideration thereof against the then existing creditors of the company.

This question is settled by the decision of the Supreme Court in the case of Clapp et al. v. Peterson, 104 Ill. 26, where it is held that the purchase of its own stock by a corporation, by the exchange of its property of equal value, though made in good faith and without any element of fraud about it, there not being anything in the apparent condition of the company to interfere with the making of the exchange, will not be allowed, where it injuriously affects a creditor of the company, even though the fact of the indebtedness was not at the time established or known to the stockholder.

The court holds that the capital stock of an incorporated company is a fund, set apart for the payment of its debts, and that the directors of the company hold it in trust for that purpose; and they say: "The shareholders of a corporation are conclusively charged with notice of the trust character which attaches to its capital stock, as to it they can not occupy the status of innocent purchasers, but they are to all intents and purposes privies to the trust. When, therefore, they have in their hands any of this trust fund, they hold it *cum onere*, subject to all equities which attach to it."

Now, the evidence, so far as it shows the purpose for which the assignment of the book accounts was made, establishes that it was made as collateral security for the note for $13,000, given in consideration of the transfer of the stock to the company, and as security for the payment of the debt due to the Kalamazoo Paper Company. This is the testimony of West and of the secretary of the company, and it is substantially uncontradicted. The transfer of the note from West to the bank having been made before the note was due, made the bank an innocent holder of the note for value, and protected it under the rule which protects the innocent purchaser of negotiable paper; but the book accounts were mere choses in action, and the assignment of them was a transfer of so much of the property of the J. L. Regan Printing Company

to West to satisfy the said note. Each successive assignee of a chose in action takes it subject to the equities existing between the original assignor and his immediate assignee. Therefore, if West could not hold the book accounts as collateral security for the payment of the $13,000 note, the bank can not hold them; for, as far as the assignment of the book accounts was concerned, the bank stands in the shoes of West. It holds its negotiable promissory note, relieved from all defenses, but holds the book accounts subject to all defenses and therefore subject to the claims of the creditors of the corporation. The court, therefore, properly dismissed the intervening petition of the said bank, but such dismissal will not operate to prevent said bank from proving up its claim upon the note, and sharing *pro rata* in the assets of the printing company in the hands of the receiver.

With reference to the intervening petition of the Kalamazoo Paper Company we reach a different result. West himself received and assigned to the bank the book accounts as security, first for the $13,000, and next to apply on the indebtedness of the Kalamazoo Paper Company. There is no pretense that the claim of the Kalamazoo Paper Company was not a valid and *bona fide* indebtedness. We see nothing in the evidence in this record that would prevent the Kalamazoo Paper Company from receiving an assignment of any property from the J. L. Regan Printing Company as collateral security for the indebtedness that was due to it.

It is argued that the Kalamazoo Paper Company knew the insolvent condition of the J. L. Regan Printing Company, because its agent, West, knew of that condition. The evidence in the record shows that while the J. L. Regan Printing Company was probably in fact insolvent, it was, at the time the assignment in question was made to West, a going concern. It was carrying on its business, and its officers expected that it would continue to carry on its business, and were undoubtedly surprised at the course pursued by West in entering up judgment and wrecking the company. The fact that West intended, at the time he took said assignment to enter up his judgments and levy upon all the remain-

ing property of the company, and leave other creditors with their debts unpaid, may be fairly inferred from the evidence. But suppose that the Kalamazoo Paper Company knew that West intended to do just what he did, and knew that the J. L. Regan Printing Company was in danger, and insolvent, and likely to be wound up, and that many of its creditors would be left without the means of satisfying the debts, what provision of law is it that would prohibit the Kalamazoo Paper Company, knowing just these facts, from seeking to get from the J. L. Regan Printing Company security for the satisfaction of its own debt?

We are aware of the principle which has been frequently applied by various courts, that directors of an insolvent corporation are trustees of its funds for creditors; that they can not give them away or use them to exonerate themselves to the injury of the other creditors. This rule was applied in Beach v. Miller, 130 Ill. 162; see, also, Kankakee Woolen Mill Company v. Kampe, 38 Mo. Appeals, 229; Rouse, Trustee, v. The Merchants National Bank, 46 Ohio St. 493.

But the fact that the directors of an insolvent company may not prefer themselves, and probably may not of their own motion prefer individual creditors after the insolvency of the corporation is ascertained and it is determined that the objects of its creation are no longer to be pursued, does not prevent a diligent creditor from pursuing all legitimate means to secure or satisfy, from the assets of the corporation, his particular debt. Indeed, it is by no means a settled question that a corporation, even though insolvent, may not prefer a particular creditor. The right of a creditor to obtain a preference over other creditors of an insolvent corporation is expressly recognized in the case of Burch v. West, 134 Ill. 258, where it is said:

" In the case at bar the corporation was undoubtedly insolvent, and this was probably known to both West and to the officers and directors of the company. But then, it is equally clear that said officers and directors did not contemplate that the corporation would make a voluntary assignment of its property, and that no such assignment was in fact made. On

the contrary, it is manifest that those in charge of the corporate affairs were using every endeavor to tide over the indebtedness of the corporation with a view of an improvement of its affairs."

This was said upon the very facts which we are here considering when the validity of the West judgment notes were under consideration. Ascribing, then, to the Kalamazoo Paper Company, the same knowledge that its agent, West, had, we are of opinion, that so far as the assignment of the book accounts was made as collateral security to the debt of that company it was valid and binding, and that the said company can not justly be deprived of the benefit thereof. Therefore the dismissal of the intervening petition of the said company was error, and the same must be reversed. Both cases are here presented on the same record.

The judgment of this court will be that the order dismissing the petition of the Commercial National Bank be affirmed; that the order dismissing the intervening petition of the Kalamazoo Paper Company be reversed, and the said petition remanded to the Circuit Court, with directions to pay over to the said paper company so much of the proceeds of the said book accounts, now in the hands of the receiver, as shall be necessary to satisfy said paper company's demand against said J. L. Regan Printing Company.

*Affirmed in part and reversed in part.*