SMITH, Respondent, vs. WILLING, Appellant.

*November 21—December 13, 1904.*

*Bills and notes: Negotiability: Blanks: Authority to fill: Judgment on cognovit: Action on such judgment: Defenses: Estoppel.*

1. A promissory note was upon a printed form which, after the printed words "pay to the order of," contained a single blank line terminating in the word "dollars." In this blank line the words "twenty-five hundred" were written at the extreme left, so as to leave no space whatever in front of them for the name of a payee, and were joined to the printed portion without physical break or separation. A warrant of attorney, embodied in the note, provided that judgment might be confessed in favor of the holder. *Held:*

(1) That part of the writing which sought to express the promise made, showed an intent that it be payable only to some person, or that person's order, and negatived intent to make it payable to whoever might happen to acquire possession, without indorsement, from the original payee.

(2) The mere authority to confess judgment in favor of the holder was insufficient to overcome the clear declaration that the note was payable to the order of a person intended to be named, but who by mistake was not named.

(3) It being a promise to pay, other than to bearer, which was not certain as to the payee, it was not negotiable.

2. In such case, the writing being joined to the printed portion without physical break or separation, the omission of the name of the payee was not the leaving of a blank which the plaintiff, as possessor, was thereby impliedly authorized to fill.

3. Defendant executed a note, with warrant of attorney, intending:
to become liable to a bank for money loaned by it to his son
personally, and refused to become liable thereon for pre-
existing debts of a corporation of which his son was president.
The note was non-negotiable by reason of omission to name
any payee. Plaintiff, being a creditor of the corporation, took
its note, and received defendant's note as collateral. Such
corporation became bankrupt and ceased to exist. Thereafter
judgment on cognovit was entered in Illinois, and action
brought on that judgment in the proper Wisconsin court.
*Held*, that the instrument being non-negotiable the plaintiff
could gain none of those technical advantages which run with
negotiable instruments, and, it being an attempt to enforce
a liability defendant never had agreed to assume, a defense of
non-liability was meritorious and equitable.
4. Plaintiff took, as collateral, from a corporation of which de-
fendant's son was president, a note of defendant which failed
to name any one as payee. There was no express representation
of authority to use the note as collateral, and plaintiff, when
he took the note, failed to observe the absence of any payee's
name, and did not require the person from whom he obtained
the note to indorse it. *Held*, that plaintiff was precluded from
any right to invoke estoppel.

CASSODAY, C. J., and MARSHALL, J., dissent.

APPEAL from a judgment of the circuit court for La
Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

Action upon a judgment of the circuit court for Cook
county, Illinois, entered July 24, 1899, without service of
process, upon cognovit, based upon a certain writing in fol-
lowing words:

"$2,500.00.        La Crosse, Wisconsin, Sept. 2, '97.

Four months after date for value received,—I promise to
pay to the order of twenty-five hundred dollars, at the office
of People's Bank, Bloomington, Illinois, with interest at
seven per cent. per annum until paid.

"And to secure the payment of said amount I hereby au-
thorize, irrevocably, any attorney of any court of record to
appear for me in such court, in term time or vacation, at any
time hereafter, and confess a judgment without process in
favor of the holder of this note, for such an amount as may
be due and also for such an amount as may become due there-

on, together with costs and fifty dollars attorney's fees, and to waive and release all errors which may intervene in any such proceedings, or in execution thereon, and consent to immediate execution upon such judgment, hereby ratifying and confirming all that my said attorney may do by virtue thereof."

"JOHN WILLING."

That note was upon a printed form which, after the words "pay to the order of," contained a single blank line terminating in the word "dollars;" the words "twenty-five hundred" being written at the extreme left of that line, so as to leave no space whatever in front of them for the name of a payee. The plaintiff's attorney, before taking judgment in Illinois, had interlined between the words "pay to the order of" and the words "twenty-five hundred" the name of *Edward E. Smith*. The defenses alleged were, first, that the judgment was taken irregularly under the statutes of Illinois, in that no proof by affidavit was made that the defendant was living, or that some part of the debt was still due; and, as counterclaim, set up the alteration of the note, without authority or right, by the insertion of the name of *Edward E. Smith*, and that *Smith* came into possession of the note fraudulently and without consideration. Judgment was prayed for dismissal of the complaint, and for injunction against further enforcement of the Illinois judgment. There was evidence that the defendant's son, L. G. Willing, being engaged in mercantile business in Bloomington, Illinois, in association with one Nelson, as a corporation, applied to his father for a note to be used at the Bloomington bank for the purpose of obtaining money to buy out his partner, and that accordingly this note was given for that purpose only, the son L. G. Willing, at the same time giving to his father his own note for a like amount; that both parties supposed that the note was payable to the Bloomington bank; that a day or two afterward a negotiation took place with the plaintiff, who was a creditor for goods furnished to said corporation to nearly the amount of $2,500, whereby it was agreed that he should advance, either in money

or goods, so as to bring the debt up to $2,500, should take a note from the corporation, and receive this note as collateral. There is dispute whether L. G. Willing participated in this arrangement, or, as he claims, it was made by the partner Nelson, without his knowledge or participation, he having reached the conclusion that the note was worthless. In the fall of 1898 the Bloomington department store failed, and, on application of its assets, such sum was received by the plaintiff as reduced his debt to about $800. The trial court found that the note was delivered to L. G. Willing by the defendant to enable the former to obtain credit for himself on the same, and refused a requested finding that it was delivered for the purpose of borrowing money at the Bloomington bank. He also found the delivery of the note to the plaintiff for the purpose above stated, and the alteration thereof at the direction of the plaintiff, and concluded that there was due the plaintiff from the defendant the sum adjudged by the Illinois judgment, whereupon judgment for the plaintiff was rendered, from which the defendant appeals.

For the appellant there was a brief by *McConnell & Schweizer,* and oral argument by *J. E. McConnell.*

*Benjamin F. Bryant,* for the respondent.

DODGE, J. The parties seem not to controvert the proposition that under the law of Illinois, as under that of Wisconsin, a judgment entered upon cognovit under power of attorney, and without service of process or other notice to the defendant, is subject to review either by direct attack on motion, by suit in equity, or by defense when the judgment is made the basis of an action. *Brown v. Parker,* 28 Wis. 21; *Lake v. Cook,* 15 Ill. 353; *Wyman v. Yeomans,* 84 Ill. 403. Nor do they disagree upon the proposition that the judgment of the Illinois court must be accorded exactly the same faith and credit by our courts as it would be given by the courts of Illinois, by virtue of the provisions of the fed-

eral constitution. *Brown v. Parker, supra.* A further proposition as to which there is and can be no dispute is that, however irregular may have been the procedure resulting in the judgment on cognovit, it will be disturbed collaterally only in case of meritorious equitable defense thereto. *Brown v. Parker, supra.*

Plaintiff's principal contention is that this is a negotiable promissory note on either of two theories: First, that, by reason of the provision in the power of attorney embodied in the note that judgment may be confessed in favor of the holder, the silence of the promissory part of the note itself as to a payee is supplied, and the note becomes, by its terms, a note payable to bearer; secondly, that omission of the name of the payee is, in practical effect, the leaving of a blank which any person having possession of the note is thereby impliedly authorized to fill up; the further contention being that, if this is a negotiable promissory note, the defendant has no meritorious defense based upon the agreement, at the time it was given, that it should be used only for a special purpose, since the very purpose of the law merchant is to give such currency and certainty to negotiable paper that equities existing only between the original parties cannot affect subsequent *bona fide* holders for value. *Young v. Ward,* 21 Ill. 226.

The first ground on which plaintiff asserts negotiability, we deem untenable. The part of the entire writing which seeks to express the promise made clearly shows an intent that it be payable only to some person or that person's order, and thus negatives intent to make it payable to whoever may happen to acquire possession, without indorsement from the original payee. The two conceptions are antagonistic. We cannot think the mere authority to confess judgment in favor of the holder sufficient to overcome that clear declaration in the promissory portion. That would be an entirely proper and enforceable provision if some person had been in fact named as payee. It surely would not then suffice to transform the

note into one payable by its terms to bearer. *Nat. Exch. Bank v. Wiley,* 25 Sup. Ct. 70. We cannot avoid the conclusion that the paper on its face shows that a payee was intended to be named but by mistake was not named. That this was the intent is confirmed by the evidence, which shows clearly that both parties to the making of the instrument intended to make it payable to the order of the People's Bank of Bloomington, and supposed they had done so. A promise to pay, other than to bearer, which is not certain as to the payee, is not negotiable, with certain well-defined conventional exceptions not at all applicable here. *McIntosh v. Lytle,* 26 Minn. 336, 3 N. W. 983; *Alexander v. Thompson,* 42 Minn. 498, 44 N. W. 534; *Brown v. Gilman,* 13 Mass. 158. No evidence of any different rule in Illinois was introduced, hence presumption of identity arises. *Slaughter v. Bernards,* 88 Wis. 111, 59 N. W. 576.

The next contention rests upon a perfectly well-established rule, that the delivery of a negotiable instrument containing a blank space for any of the material elements thereof implies authority to fill up such blank in the hands of any one to whom it may come. *Snyder v. Van Doren,* 46 Wis. 602, 1 N. W. 285; *Johnston H. Co. v. McLean,* 57 Wis. 258, 15 N. W. 177; *Johnson v. Weed & G. Mfg. Co.* 103 Wis. 291, 295, 79 N. W. 236; *Angle v. Northwestern M. L. Ins. Co.* 92 U. S. 330; *Dinsmore v. Duncan,* 57 N. Y. 573. This rule is based on implied agreement with any one who may become the owner, and is not to be confused in principle or application with those cases, some of which are cited above, where an incomplete instrument is delivered to one, not as payee, but as agent, with authority to make it complete, and where the agent exceeds his authority; for the insertion of plaintiff's name in this paper was not made by defendant's agent, but by plaintiff himself, under his claimed rights as owner. This implied authority depends, however, on the very existence of

a blank. There is no right in the holder of a contract, negotiable or otherwise, to rewrite it or insert omitted provisions, except where the signer, by leaving a blank, obviously delivers it with such intention. In the instrument before us there was no blank; the writing joined to the printed portion without physical break or separation. True, there was an hiatus in sense, but that does not carry with it any authority to supply the missing term.

We must therefore reach the conclusion that this instrument is not negotiable. Whether it is absolutely void as a contract, either originally, because containing no promise to pay to any one, or subsequently, because of illegal alteration by plaintiff, for both which contentions there is authority, we need not decide. Being nonnegotiable, the plaintiff could gain none of those technical protections or advantages which run with that class of contracts. He can, at most, rely on equitable doctrines of estoppel, if he was misled to his hurt by defendant's act. Defendant, of course, had a perfect right to make his own contract. He had the right to say he would be liable to the Bloomington bank for money to be loaned to his son, personally, and to refuse to become liable for pre-existing debts of the corporation of which his son was president. He did agree to the former, and not to the latter, to which, however, the judgment subjects him, obviously to his injury, for the corporation is bankrupt and out of existence, and he can have no hope of reimbursement from it. His defense, therefore, to the liability asserted is not technical, but meritorious and equitable. It is that he never agreed to assume it.

Notwithstanding all this, however, he might still be equitably estopped to deny liability if plaintiff had been induced to change his position in reliance upon acts of defendant which the latter intended to have such effect, or ought reasonably to have anticipated would do so. *Gove v. White*, 20 Wis.

425, 437; *Anderson v. Coburn,* 27 Wis. 558, 566; *Kingman v. Graham,* 51 Wis. 232; *Simonsen v. Stachlewicz,* 82 Wis. 338, 52 N. W. 310; *Brothers v. Bank of Kaukauna,* 84 Wis. 381, 397, 54 N. W. 786; *Mygatt v. Tarbell,* 85 Wis. 457, 467, 55 N. W. 1031; *Loizeaux v. Fremder, ante,* p. 193, 101 N. W. 423. The plaintiff does not claim that there was any express representation to him by L. G. Willing that defendant had given any authority to use the note as collateral to the corporation's debts; hence, if misled at all, such misleading must have been by the instrument itself. He testifies, however, that at the time of taking the note he did not observe the absence of any payee's name; hence, so far as he knew, it might have been payable expressly to some third person; so that on no theory could he reasonably expect to get any title to it without such payee's indorsement. Such negligence would seem to preclude him from any right to invoke estoppel; it is not reliance upon any act of defendant. *Pier v. Bullis,* 48 Wis. 429, 434, 4 N. W. 381; *Kingman v. Graham, supra; Trenton B. Co. v. Duncan,* 86 N. Y. 221. Independently of this, however, we cannot discover anything in the note itself to justify him in supposing it was intended for him. As already stated, it showed on its face an intent by defendant to become bound to some person or that person's order. He did not assume that L. G. Willing was the person, for he did not require him to indorse. If he assumed that from the omission to name a payee there resulted a right in any holder to insert his own name, then he made a mistake of law; but surely defendant cannot be charged with duty to anticipate such a mistake. He had the right to expect that any one dealing with the paper would act in recognition of established rules of law. *Loizeaux v. Fremder, supra.* If, however, plaintiff had inferred, as he must if he read the paper, that there was a mere omission, that some one was intended to be named as payee, and that to complete the instrument that person's name must be added, he certainly was put

upon inquiry to ascertain that person. There was nothing to warrant him in believing that he, of all the world, was the one.

The legal principles above announced, applied to the undisputed facts that the only contract made by defendant and attempted to be expressed by the so-called "note" was merely to be liable to the Bloomington bank, or its order, and only for money to be loaned L. G. Willing personally, result in the conclusion that defendant never became liable at all to the plaintiff, and therefore is entitled to judgment denying plaintiff any recovery, and enjoining any further attempted enforcement of the judgment entered in Illinois upon cognovit.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the prayer of the answer and counterclaim.

CASSODAY, C. J. (*dissenting*). The defendant's signature to the written instrument in question is undisputed. At the time of signing that instrument, the defendant received from his son his note for the same amount—$2,500. The son resided at Bloomington, Illinois. He was president of the corporation mentioned in the opinion of the court, and testified that his father gave him the paper to see if he could get money on it from the People's Bank of Bloomington, and, among other things, said:

"I had no arrangement at all with my father concerning getting money on this paper, only I gave him another note in place of it. I was intending to use the money I was to get at the bank to buy the shares of my former partner."

The defendant testified to nothing to the contrary. The instrument in question, therefore, was based upon a good consideration, being a note of equal amount. It was given for the very purpose of raising money to aid the son in the business of the corporation—buying out his partner's stock. The

attorney who appeared in the case in behalf of the defendant was expressly authorized to appear for him and confess judgment without process. Certainly the Illinois court had jurisdiction over the defendant and the subject-matter in entering judgment against the defendant. That judgment is entitled to full faith and credit, and to the same validity and effect in this state that it had in Illinois. Sec. 1, art. IV, Const. U. S.; *Mills v. Duryee,* 7 Cranch, 481; *Hampton v. McConnel,* 3 Wheat. 234; *Sanborn v. Perry,* 86 Wis. 361, 366, 56 N. W. 337, and cases there cited; *Frame v. Thormann,* 102 Wis. 653, 669, 79 N. W. 39; *S. C.* 176 U. S. 350, 20 Sup. Ct. 446. Such full faith and credit, in my judgment, precludes a collateral attack, in the court of another state, based upon mere irregularities and errors not going to the jurisdiction of the court rendering the judgment, nor to the consideration upon which the judgment is based. The power of a court to set aside its own judgments for irregularities or errors, within a limited time, may be conceded, but the power of other courts—not appellate—is limited to matters of jurisdiction and substantial rights. Whether the instrument was used to raise money from the People's Bank of Bloomington, or otherwise used by the son to help out the corporation of which he was the president, or to buy out his partner, was of no material consequence to the defendant; and the son is not here complaining. The liability of the defendant does not depend upon the negotiability of the instrument, but upon whether there was a good and valid consideration for his promise to pay. Equity regards substance, not form. The defendant executed and delivered the instrument in consideration of his son's note for the same amount, and without any fraud being practiced upon him. To my mind, there is a failure to present any meritorious defense such as could be established in a court of Illinois, outside of the one in which the judgment was rendered. *Atkinson v. Foster,* 134 Ill. 472, 25 N. E. 528; *Hempstead v. Humphrey,* 38 Ill.

90; *Hansen v. Schlesinger,* 125 Ill. 230, 17 N. E. 718;
*Burch v. West,* 134 Ill. 258, 25 N. E. 658; *Farwell v. Hus-
ton,* 151 Ill. 239, 37 N. E. 864; *Blake v. State Bank,* 178
Ill. 182, 52 N. E. 957.

MARSHALL, J. (*dissenting*).  I cannot concur in the decis-
ion in this case.  It seems that my brethren have overlooked
two important matters, either of which properly applied
would have led to a different result.  I will state them briefly.

In Illinois where the judgment sought to be enforced was
entered the doctrine does not prevail that there must be a cer-
tain payee mentioned in a paper as an essential to its being
a promissory note, or that there must be a blank in such
paper suggesting authority to the holder to fill up the same
by writing in the name of a payee, and that the filling up of
the blank is a condition precedent to the instruments being
treated as a promissory note.  A writing worded thus: "Good
for 50 cents.  H. C. Meyers, Sut."—in *Weston v. Myers,*
33 Ill. 424, was held to be a good promissory note, enforci-
ble by the holder without the addition of any words there-
to, although the holder might, if he saw fit, have written
after the words "cents" *payable to the order of myself.*
The doctrine that a note complete in form, except as to the
name of the payee, a blank being left therein therefor, sug-
gesting authority to the holder to properly fill the same, was,
in effect, said to be applicable to any paper indicating clearly
intention by the maker to execute a negotiable promissory
note.  That is recognized by text-writers to be somewhat out
of harmony with the general rule.  Randolph on Commer-
cial Paper, § 167 (2d ed.).  However, it being the law of Illi-
nois it seems that the instrument in question would be re-
garded there as a good negotiable promissory note in the
hands of any holder for value, and that the familiar doctrine
referred to by my brethren permitting the impeachment upon
equitable grounds of a judgment entered by confession upon

an attempt being made to enforce the same does not apply. It could not be successfully invoked in the courts of Illinois, and it is conceded that such being the case it cannot properly be so invoked here.

My brethren considered the rights of the parties only from the standpoint of the ordinary relations existing between the maker and a *bona fide* holder by indorsement of a negotiable promissory note, as if the holder of such a note, or a mere assignee for value of a contract to pay money, could not under any circumstances be safe from defenses possessed by the payor against the original payee. No time need be spent, it seems, demonstrating that upon principle and authority such holder may by the law of estoppel *in pais,* in some circumstances, be safe against such defenses. *Wiggin v. Damrell,* 4 N. H. 69; *Bradford v. Williams,* 91 N. C. 7. If a person puts another in possession of a chose in action under such circumstances as to suggest to others that it is free from any defense in such person's behalf, he cannot change that apparent situation to the prejudice of a third party dealing therewith in the exercise of ordinary care. That is the effect of the cases cited. The principle requires no discussion to demonstrate its correctness. It applies to this case in my judgment. In any view that can be taken thereof, appellant, in effect, held out his son to be the owner of a defective promissory note and the possessor of an equitable right to its reformation and of authority to transfer the defective instrument with such incidental right. Therefore as to one who parted with value relying upon such appearances, he is estopped from changing his apparent position to that one's prejudice. Appellant's secret agreement with his son as to the use to be made of the note cannot properly be regarded as the foundation of an equity superior to that possessed by the purchaser from the son who acted with due care and in good faith, relying upon appearances for which appellant was responsible.