HAMLEY, Appellant, vs. TILL, Respondent.

*February 1—March 14, 1916.*

*Vendor and purchaser of land: Validity of contract: Insufficient description: Bills and notes: Consideration: Unauthorized corporate stock: Fraud: Holder in due course.*

1. A contract to convey an undivided one acre out of a designated tract containing a specified number of acres may be valid; but where the tract out of which the acre is to be sold is not capable of identification from the instrument evidencing the sale, nothing passes for want of description.
2. Notes given for preferred stock in a corporation which had no authority to issue such stock, and notes given for so-called certificate contracts of the corporation, which purported to convey an undivided interest in lands in a foreign country but which in fact conveyed no enforceable rights and were merely illusory and fraudulent, were without consideration and there could be no recovery thereon as between the payee and the maker.
3. The defense of fraud is available against an interstate commerce contract as well as against other contracts.
4. In an action by an indorsee of the notes above mentioned, evidence showing, among other things, that plaintiff knew of the fraudulent character of the consideration for the notes before he purchased them, is *held* to sustain findings by the jury to the effect that he did not acquire them in the usual course of business or for value or in good faith.

APPEAL from a judgment of the circuit court for St. Croix county: JAMES O'NEILL, Judge.   *Affirmed.*

For the appellant the cause was submitted on the brief of *McNally & Doar.*

For the respondent there was a brief by *James R. Hickey,* attorney, and *Spencer Haven,* of counsel, and oral argument by *C. G. Kinney.*

TIMLIN, J.   The action is by the indorsee of four promissory notes executed by respondent to the Honduras Development Company for $200 each, two of them bearing date October 14, 1911, and two December 27, 1911.   Briefly, the defenses are that the payee was an unlicensed foreign corporation doing business in this state, and also that it procured the notes by fraudulent representation of one Phillips, and the plaintiff was not a holder in good faith or in due course.   The case was tried before the court and jury, and the latter found by special verdict that the plaintiff did not acquire said notes in the usual course of business or for value or in good faith; but, although fraud by the Honduras Development Company was averred and that averment supported by some evidence, there was no question concerning this fraud submitted to the jury.   The court did decide that the evidence showed there was no consideration for the two notes given for preferred stock which the Honduras Company had no authority to issue, and that the other two notes were taken in Wisconsin by an unlicensed foreign corporation contrary to the provisions of sec. 1770b, Stats., and were void.   The jury then found the plaintiff not a purchaser in due course or in good faith.   A description of this corporation and its operations and the documents it was engaged in selling to the public would, upon the uncontradicted evidence, warrant the court below in going much farther than he did in passing upon this phase of the case.   The Honduras Development Company, ostensibly a corporation organized under

the laws of Arizona with a common capital stock of $100,000 divided into 1,000 shares of $100 each, had an office in St. Paul, Minnesota, where it was engaged in selling to the.public through the agency of its general manager, one Phillips, preferred stock, of which it had none, and so-called certificate contracts which conveyed no rights enforceable at law or in equity and were merely illusory and fraudulent. It does not appear that it had any other business. Its articles of incorporation included almost every known form of human activity from constructing and operating railroads and carrying on banking to trading in real estate and personal property. These articles were executed and acknowledged in St. Paul, Minnesota, on August 21, 1911, and five days later filed in the office of the county recorder of Maricopa county, in the territory of Arizona, and in the office of the territorial auditor of that territory. It does not appear that any of the incorporators resided within, or indeed was ever within, the territory of Arizona. We cannot judicially notice the laws of Arizona, but must presume they are like ours. These laws must possess great potency and long range if they can confer corporate status on nonresidents of Arizona. Creation of a corporation is a legislative act and state statutes have no extraterritorial operation. The Honduras Company had a branch office at St. Paul, Minnesota, but was not licensed to carry on business in that state or in the state of Wisconsin. Its sale of preferred stock need not be further described than by saying it had no preferred stock. It issued for $150, payable in instalments and forfeitable for failure to pay, what it called a certificate contract, purporting on its face to entitle the purchaser to "an undivided one-acre interest in and to a two-thousand-acre tract of land lying and being in the department of Atlantida in the republic of Honduras, one of the Central American states, a more particular and accurate description of which said two-thousand-acre tract of land will be contained in the plantation certificate furnished this contract

owner when said contract shall have been performed by pay-
ing the purchase price designated in the application for said
contract." The Honduras Company agreed to plant and care
for the land for a period of five years from and after the first
planting by it and thereafter up to such time as the land rep-
resented by the contracts or certificates so sold would be con-
veyed to a company organized by the certificate owners. The
plantation certificate owners would, after the expiration of
the first five years following the first planting and every five-
year period thereafter, receive notice from the secretary of
the Honduras Company, whereupon they might vote by mail
with that secretary for or against incorporation. If a ma-
jority of the plantation holders were opposed to incorporation
they would have another chance to vote on this subject in the
same way at the end of five more years. When they could
agree as determined in this mode the Honduras Company
would convey the land or some land to a corporation which
these plantation certificate holders might organize. In the
meantime the Honduras Company was to attend to the land,
care for it, and cultivate it for a percentage of the crop out-
put, the remainder of such output, if any, to be distributed by
the Honduras Company among the contract holders or planta-
tion certificate holders, or both.

Cases might be found which support a deed or contract to
convey an undivided one acre or several acres out of a desig-
nated tract containing a specified number of acres because the
court considered this a crude way of expressing the intention
to convey such undivided interest in said described tract as
would be represented by a fraction having the number of acres
stated to be sold for its numerator and the whole number of
acres in the designated and described tract as its denominator.
But where the tract out of which the acre is to be sold is not
capable of identification from the instrument evidencing the
sale, nothing passes for want of description. Here the Hon-
duras Company might as well have sold one acre of land in
the department of Atlantida in the republic of Honduras be-

cause their description identifies the land no closer than this.
It is true a better description is promised in the plantation
certificate which is to follow, provided, etc., but the purchaser
has no way of ascertaining whether the description covers the
same land he has purchased; besides there is no limit on the
number of acres the Honduras Company might sell out of a
given tract in this way. If the description were good, after
the first sale the Honduras Company, if it owned the land in
the department mentioned, became a tenant in common with
the first purchaser, after a second sale a tenant in common
with the first and second purchasers, and so on, always re-
taining an undivided interest in the land until it had
sold 2,000 of these certificates. This it might never do. So
the purchasers of these certificates under the guardianship
and tutelage of the Honduras Company could never incorpo-
rate without the consent of the latter. In addition to this,
there was evidence that the Honduras Company never pos-
sessed more than 300 acres of land, and whether that was
mountain or marsh, timber or plain, rural or urban, we do not
know. The contract in question secured to the purchaser no
land of any definite kind or description, provided only that
the land was in the department of Atlantida in the republic
of Honduras. These certificate contracts are on the face and
by their setting of promises ingeniously fraudulent.

It is argued that the notes in question were taken in a trans-
action of interstate commerce and therefore, notwithstanding
that the Honduras Company had no license to carry on busi-
ness either in Minnesota or Wisconsin, the provisions of sec.
1770b annulling its contracts are not applicable because of
the exception found by this court excluding interstate com-
merce transactions from the provisions of sec. 1770b. But
fraud is a defense available against an interstate commerce
contract as well as against other contracts.

The appellant knew of the business in which the Hon-
duras Company was engaged; he knew that the consideration
for these notes was either unauthorized and fraudulent pre-

ferred stock or the illusory and equally fraudulent certificate contract, because he knew of no other business the Honduras Company had and he had been a holder in that company of some of this so-called preferred stock and exchanged this stock with the Honduras Company for the notes in question. True he testifies that he paid also part cash for these notes. But the testimony was not very satisfactory on this point. He apparently had some controversy with the Honduras Company regarding his preferred stock before he bought the notes in suit. What this controversy was is not fully disclosed, but enough was shown to warrant the jury in finding that the appellant was endeavoring to get the Honduras Company to take back the so-called preferred stock which he had purchased and that that company took it back with some money for the notes in suit. The jury was also warranted in believing, although he testified both ways on the subject, that the appellant had heard rumors prior to his purchase of the notes in question that Mr. Phillips, who was the chief man in the Honduras Company and who made or directed the transactions between that company and the appellant and between that company and the respondent, had some state prison experience prior to the launching of the Honduras Development Company. It may be that the appellant was a victim of the Honduras Development Company and believed that he was not and consequently that the respondent was not, that he believed in the validity of his preferred stock and in the legitimacy of the business in which the Honduras Company was engaged. There are many such simple, credulous souls, no doubt, but from the evidence in this case it was for the jury to say whether the plaintiff belonged in that class or whether he had sufficient notice and knowledge to put him, as a man of ordinary intelligence, on inquiry before he purchased the notes of the respondent.

*By the Court.*—Judgment affirmed.