MALAS, Appellant, vs. LOUNSBURY and another, imp.,
Respondents.

*April 5—October 11, 1927.*

Contracts: Conditional sales agreements: Fraud: Defenses avail-
    able against assignee of seller: Estoppel.

1. An express agreement made in a contract that it shall be in-
   contestable for fraud is against public policy and void; and
   with the exception of negotiable instruments, all contracts
   procured by fraud are voidable. p. 534.
2. Fraud in the inducement of a contract may be set up by the
   obligor as a defense when sued upon it. p. 534.
3. The assignee of a non-negotiable chose in action, though he
   buys it for value and in good faith, takes it subject to all de-
   fenses which the obligor may have had against the assignor.
   p. 535.
4. A conditional sales contract which was induced by fraud is
   voidable under sec. 260.14, Stats., as against one taking an
   assignment from the seller, notwithstanding a recital in such
   contract acknowledging delivery and acceptance; and the
   buyer is not estopped from asserting fraud against an as-
   signee not having knowledge of the fraud. p. 535.
       OWEN, J., dissents.

APPEAL from a judgment of the circuit court for Dane
county: AUGUST C. HOPPMANN, Circuit Judge. *Reversed,
with directions.*

The plaintiff commenced this action for the cancellation
of a conditional sales contract which he executed to the de-
fendant *F. L. Lounsbury.* Upon its face the contract was
for the remainder of the purchase price of a refrigerating
plant which was to have been installed by the defendant
*Lounsbury* in plaintiff's meat market in Madison by April 25,
1925. The plant had not been installed by July 9, 1925,
and on that day the defendant *Lounsbury* procured the sig-
nature of the plaintiff to the conditional sales contract upon
false representations that all of the parts of the plant were
then at the depot in Madison ready for immediate installa-
tion. Defendant *Lounsbury* sold the contract to the defend-

ant *Acceptance Company* and never performed. The defendant company answered, and by way of cross-complaint asked for judgment in its favor against the plaintiff upon the conditional sales contract. The case was tried before the court without a jury, and the court found as facts the making of the contract between *Lounsbury* and plaintiff on March 25, 1925; that the price to be paid by the plaintiff was $964, $100 of which was to be paid on the date of the contract and the balance was to be paid at the rate of $72 per month; that the defendant *Lounsbury* falsely represented to the plaintiff on July 9, 1925, the day on which the contract was executed, that the refrigerating machine was then at the depot in Madison; that he desired to borrow $50 from the Bank of Wisconsin on the conditional sales contract in order that he might be able to pay the freight so as to get possession of the machine; that a few days after the signing of the contract the defendant *Lounsbury* sold it to the defendant company for $800; that the defendant company purchased the contract in the regular course of business and was an innocent purchaser; that there was due the defendant company the sum of $991.44 as principal, interest, and attorneys' fees under said contract. The court also found that the defendant *Lounsbury* took some steps in the installation of said machine but entirely failed to complete such installation; that plaintiff expended in aid of installing said machine $162.10, and that if said machine had been installed as provided for in said contract plaintiff would have saved the sum of $1 per day in the cooling of his place of business; that plaintiff removed the parts of the machine which had been installed at an expense of $38.10; that on the 1st day of December, 1925, plaintiff notified both defendants that he rescinded said contracts and tendered back all of the parts of the machinery placed on the premises by the defendant *Lounsbury*. The court concluded that the plaintiff was entitled to judgment against *Lounsbury* for

$672.20 with costs and disbursements; that the complaint be dismissed as to the defendant *Acceptance Company* with costs; that the defendant *Acceptance Company* recover from the defendant the sum of $991.41 with interest and costs.

From the judgment entered accordingly the plaintiff appeals.

For the appellant there was a brief by *Curkeet & Lewis* of Madison, and oral argument by *William R. Curkeet.*

For the respondent *Southern Wisconsin Acceptance Company* there was a brief by *Sanborn, Blake & Aberg,* attorneys, and *Ernest H. Pett,* of counsel, all of Madison, and oral argument by *Mr. John B. Sanborn* and *Mr. Pett.*

The following opinions were filed June 20, 1927:

ROSENBERRY, J.   The principal contention of the plaintiff is that, the conditional sales contract having been procured by false and fraudulent representations, it is voidable both as to the defendant *Lounsbury* and his assignee, the defendant company.

The contention of the defendant company is that, the plaintiff having knowingly and intentionally signed the contract which contained a recital to the following effect:

"This agreement witnesseth: That Modern Equipment & Engineering Company [*Lounsbury*], hereinafter called 'the seller,' has sold, and *Nick Malas,* hereinafter called 'the buyer,' has bought one Model 2½-ton Arctic refrigerating machine, serial number ———, as per proposal attached, hereinafter referred to as 'the goods,' delivery and acceptance of which is hereby acknowledged by the buyer, for which the. buyer agrees to pay the seller," etc.,—

the plaintiff is now estopped to deny the truth of the recital as against an innocent purchaser who has relied upon it.

In support of its contention the defendant company cites *Guaranty S. Co. v. Equitable T. Co.* 136 Md. 417, 110 Atl. 860; *Guaranty S. Co. v. Exchange State Bank,* 148 Minn. 60, 180 N. W. 919; *Bristol-Goodson E. L. & P. Co. v.*

*Bristol G., E. L. & P. Co.* 99 Tenn. 371, 42 S. W. 19, and other cases.

We do not find it necessary in our disposition of the case to discuss or decide the very interesting question raised by the contention made by the defendant company. Bearing upon the question, however, attention is called to the following cases: *American Nat. Bank v. A. G. Sommerville, Inc.* 191 Cal. 364, 216 Pac. 376; *Whiting v. Squeglia,* 70 Cal. App. 108, 232 Pac. 986; *Pacific Acceptance Corp. v. Whalen* (Idaho) 248 Pac. 444.

It clearly appears that the signature of the plaintiff to the conditional sales contract was procured by the false and fraudulent representations made by the defendant *Lounsbury;* that as between the plaintiff and the defendant *Lounsbury* the contract was voidable because its execution was induced by fraud there can be no reasonable question.

We are then confronted with the question, Does the assignee, the defendant company, stand in any better position than its assignor, the defendant *Lounsbury,* so far as the right of the plaintiff to avoid the contract is concerned? An express agreement made in a contract that it shall be incontestable for fraud is void as against public policy. *Reagan v. Union Mut. L. Ins. Co.* 189 Mass. 555, 76 N. E. 217, 2 L. R. A. n. s. 821; *Pearson v. Dublin,* [1907] App. Cas. 351; *Industrial & G. Trust, Ltd. v. Tod,* 180 N. Y. 215, 73 N. E. 7.

Since *Wheelton v. Hardisty,* 8 El. & Bl. 232, in which Lord Campbell held that a provision in a contract that it should be indefensible was "subject to an implied exception of personal fraud which shall vitiate every contract," it has been the rule that all contracts procured by fraud were voidable with the single exception of negotiable instruments.

Fraud in the inducement of a contract may be set up by the obligor as a defense when sued upon it. *Harriman Nat. Bank v. Seldomridge,* 249 U. S. 1, 39 Sup. Ct. 244; 1

Page, Contracts (2d ed.), p. 343, § 227, and cases cited; *Hamley v. Till,* 162 Wis. 533, 156 N. W. 968.

Sec. 260.14, Stats., provides:

"In case of an assignment of a thing in action the action of the assignee shall be without prejudice to any setoff or other defense existing at the time or before notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon good consideration before due."

The assignee of a non-negotiable chose in action, though he buys it for value and in good faith, takes it subject to all defenses which the obligor may have had against the assignor. *Mangles v. Dixon,* 3 H. L. Cas. 702, 731; 1 Williston, Contracts, p. 813, § 432, and cases cited.

It is argued, however, that this rule is subject to the exception that the debtor has not intrusted to the assignor an instrument which by its form estops himself from setting up the defense. It being, as we have already seen, void as against public policy to make a contract indefensible on the ground of fraud, it must be equally true that the defense of fraud cannot be cut off by mere recitals contained in the instrument assigned.

The plaintiff's signature to the contract having been induced by fraud, the contract itself is vitiated and at the election of the plaintiff was voidable, and the plaintiff's rights in that respect are not altered by the assignment to the defendant company by the defendant *Lounsbury.* To hold otherwise is to hold that in practical effect it becomes by assignment a negotiable instrument. If the contract were valid, it might well be that as against the defendant *Lounsbury* there was a total failure of consideration and that such failure of consideration could be set up as a defense to an action brought by the defendant *Lounsbury's* assignee. It is not necessary to decide that question here, and it is only mentioned to negative any possible implication that the matter was overlooked or decided in this case.

In this case plaintiff was induced to sign the contract by the false and fraudulent representations made to him by the defendant *Lounsbury* that the property was at the depot in Madison.   Relying upon that false and fraudulent representation, the plaintiff signed the contract in which he acknowledged the receipt of the goods.   It is not claimed that the plaintiff acted in bad faith.   Confusion in this case results from the fact that the false representations related to the facts involved in the recital.   The question of whether or not the contract was voidable must be determined by what happened prior to or at the time of its execution and delivery.   The fact that thereafter something else happened does not change the legal effect of that transaction.   If the contract was valid and the defendant company had relied upon a recital contained therein, the question presented by the contention made by the defendant company would then arise.   The contract being vitiated by fraud and voidable, it does not arise in this case.   The facts being undisputed, we see no reason for remanding the case for a new trial.   Plaintiff received nothing of value on account of the contract.

*By the Court.*—The judgment appealed from is reversed, and the cause is remanded with directions to enter judgment for the plaintiff as indicated herein.

Owen, J. (*dissenting*).   It seems plain to me that the plaintiff is estopped, so far as the *Southern Wisconsin Acceptance Company* is concerned, to allege the non-delivery of the Arctic refrigerator machine.   After his order for this machine had been given, and after certain parts thereof had been installed, *Lounsbury* asked *Malas* for a conditional sale contract for the express purpose of enabling him to borrow money thereon.   At this time the machine had not been installed.   *Lounsbury,* however, represented to *Malas* that it was at the depot.   Knowing that it had not been installed, *Malas* executed the conditional sale contract,

in which he acknowledged delivery and acceptance of the machine.   At this time he knew it had not been delivered, and he executed this contract containing this declaration for the express purpose of enabling *Lounsbury* to borrow money thereon.   *Lounsbury* took this contract to the *Southern Wisconsin Acceptance Company,* and that company, relying upon the representation that the machine had been delivered and accepted, bought the contract.   *Malas* now brings this action to have the contract set aside upon the ground that *Lounsbury* failed to install the machine.

There is no doubt that as between plaintiff and *Lounsbury* plaintiff has a good cause of action for the cancellation of the contract.   Neither is there any doubt that he would have the same cause of action, or the same defenses to a cause of action brought to recover thereon, as against an assignee of *Lounsbury,* unless, as to such assignee, he has estopped himself.

There is nothing sacred in the rule of law which permits all of the defenses to a non-negotiable instrument while in the hands of an assignee that are available against the original party.   It has been held by this court that a widow may be estopped from claiming her right of dower (*H. W. Wright L. Co. v. McCord,* 145 Wis. 93, 128 N. W. 873), and that a wife may be estopped from claiming her homestead (*Krueger v. Groth;* 190 Wis. 387, 209 N. W. 772). I know of no reason why a party situated as *Malas* may not estop himself from claiming non-delivery of the machine as against the assignee of *Lounsbury.*   It seems to me that this was effectually done when by his own declarations he led the *Southern Wisconsin Acceptance Company* to believe that the machine had been delivered, installed, and accepted.   This is particularly true when he did it for the special purpose of enabling *Lounsbury* to raise money upon the contract.   I am unable to appreciate the morality of the doctrine which enables *Malas* under such circumstances, after he has induced the *Southern Wisconsin Ac-*

*ceptance Company* to make an investment in this contract, to come into court and say that the declaration upon which the *Southern Wisconsin Acceptance Company* relied, upon which it had a right to rely, and by reason of which it invested its money, was a falsehood.

It is said that he was induced to make this declaration by reason of the false representations of *Lounsbury* that the machine was at the depot. Even though the machine was at the depot *Malas* knew that it was not installed, and such representations afford him no excuse for making the declaration he did. Even though the misrepresentation had been merely that the machine was at the depot, if material and relied upon it would have been none the less fraudulent, even though *Malas* actually believed it was at the depot. It is well established that one who makes a representation must know that it is true. A misrepresentation made innocently is none the less fraud because he who makes it believes it to be true. The decision in this case establishes the doctrine that one who is the victim of fraud may by further fraud pass his loss on to another, as the cost of production is passed on to the consumer. I regard this as grossly immoral, unjust, and contrary to well established legal principles. I must therefore dissent.

A motion for a rehearing was denied, with $25 costs, on October 11, 1927.