NORMAN F. THIEX, INC., Respondent, vs. GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant.

*March 5—April 2, 1935.*

For the appellant there was a brief by *Mandelker & McCarthy* of Milwaukee, and oral argument by *James E. McCarthy*.

For the respondent there was a brief by *Buchen & Federer* of Sheboygan, and oral argument by *G. W. Buchen*.

Fritz, J. The automobile, which defendant took from the possession of plaintiff under such circumstances that it charges the defendant with the conversion thereof and for which it seeks to recover damages, was purchased on December 15, 1932, by plaintiff from Dan Hamacheck, Inc., under a conditional sales contract signed by those parties. The purchase price was $1,104, on which plaintiff was permitted to apply a credit of $384 for a used car, which left an unpaid deferred balance of $720. The contract was on a printed form, at the outset of which there was the statement: "Original to be sent to General Motors Acceptance Corporation." It provided that the balance of $720 was "payable at the offices of General Motors Acceptance Corporation to be hereafter designated by it, in instalments of $35, on the same day of each successive month, or as indicated in schedule of payments below, and commencing January 15, 1933; and the final instalment payable hereunder shall equal the amount of the deferred balance remaining due." There was also a provision that "Title to said property shall not pass to the purchaser until said amount is fully paid in cash." Closely following those provisions there was printed, in a space inclosed by heavy lines near the left-hand margin of the document, the form for a "Schedule for other than equal monthly payments;" and that was followed by twelve lines reading:

"$............ 1 mo. hereafter
"$............ 2 mo. hereafter
"$............ 3 mo. hereafter,"

and continuing thus for each successive month to "$—— 12 mo. hereafter."

Simultaneously with the signing of that contract the plaintiff and Dan Hamacheck, Inc., also entered into another contract for outdoor advertising signs to be maintained for two years by plaintiff for Dan Hamacheck, Inc., and for which the latter agreed to pay $36 per month for twenty-four months, with the proviso that so much of those monthly payments as

was required to pay the monthly instalments on the automobile, purchased under the conditional sales contract, was to be applied and paid by Dan Hamacheck, Inc., on payments which became due on the automobile. However, neither the advertising contract nor the provision therein in relation to the application of the payments to be made thereunder, was referred to or mentioned in the conditional sales contract. On the other hand, in connection with signing the latter contract, the plaintiff also signed a "purchaser's statement," which was addressed to "Dan Hamacheck, Inc., and to General Motors Acceptance Corporation." At the end of that statement a warranty as to the truth thereof, which was also signed by plaintiff, stated that the information "is offered for the purpose of obtaining credit from the sources first named herein, and if credit is extended (the contract which this statement covers may be assigned to General Motors Acceptance Corporation) the undersigned agrees that if remittance or tender is made in any medium except cash, payment upon said obligation will only be effected to the extent of cash finally collected and received." At the bottom of that conditional sales contract there were also the printed words "Dealer's Recommendation, Assignment and Guaranty." Those words were followed by a printed form for an assignment of the contract to the "General Motors Acceptance Corporation;" and shortly after plaintiff signed the contract, that assignment to the defendant was executed by Dan Hamacheck, Inc., in connection with the assignment and delivery of that conditional sales contract to the defendant.

The court found that, when the plaintiff signed the conditional sales contract, the blanks left for the insertion as to the twelve monthly payments, in the box for the "Schedule for other than equal monthly payments," had not been filled in, and, although there is some conflict in the evidence on that subject, that finding cannot be held to be against the clear preponderance of the evidence. However, before Hamacheck

delivered that contract to the defendant, he inserted in that schedule, "$35 for 11 months and $335 for 1 month." After the contracts were signed and the automobile was delivered to the plaintiff, the conditional sales contract was assigned and delivered, for valuable consideration, to the defendant, without any notice to it in respect to the advertising contract. The plaintiff immediately commenced performance of that advertising contract, and Dan Hamacheck, Inc., on January 30, 1933, paid the first instalment of $35 due under the conditional sales contract to the defendant. On February 23, 1933, the defendant mailed a "statement" to plaintiff, with the request to—

"verify the following details pertaining to your signed agreement which we hold.
"Last installment paid January.
"Date paid 1-30-33.
"You still owe us $685.00.
"Are these figures correct? ——.
"Is car in your possession? ——."

That statement was promptly returned to the defendant by the plaintiff with its signature and the word "Yes" inserted as its answers to the questions whether the figures were correct, and whether the car was in its possession. Thereafter, Dan Hamacheck, Inc., made a voluntary assignment, and no further payment was made on the conditional sales contract. Because of that default, the defendant, after demanding payment by the plaintiff of the February instalment, duly seized the automobile on March 22, 1933, under the terms of that contract, and it was duly sold on a public sale for less than the unpaid balance owing under that contract. Thereupon the plaintiff commenced this action for conversion.

On the trial, and also on a motion to review on this appeal, plaintiff contends that, as the conditional sales contract was nonnegotiable, the defendant, as the assignee thereof, took it subject to all defenses available against the assignor (citing sec. 260.14, Stats.; *Malas v. Lounsbury*, 193 Wis.

531, 535, 214 N. W. 332; 55 C. J. p. 1331, § 1414, p. 1334, § 1417), and that, consequently, the plaintiff was entitled to have the payments which were to be made by Dan Hamacheck, Inc., under the advertising contract, or plaintiff's damages for the breach of that contract, credited on and set off against the payments which it was to make under the conditional sales contract. The learned circuit judge held, in respect to those contentions, that plaintiff knew, or ought to have known, at the time it executed and delivered the conditional sales contract to Dan Hamacheck, Inc., that the latter would or might assign that contract to the defendant, and that, because of the affirmative action on plaintiff's part, in the several respects stated above, upon which defendant had relied and was entitled to rely, the plaintiff was estopped from pleading any setoff or counterclaim arising under the advertising contract.

The record well warrants the court's determination in those respects. Throughout that contract and purchaser's statement it appeared repeatedly, on the face thereof, that the defendant was to be an interested party thereunder, as the assignee thereof. Thus, the statement thereon, "Original to be sent to General Motors Acceptance Corporation;" the provision therein that the deferred payments were payable at the "offices of General Motors Acceptance Corporation;" the addressing of the purchaser's statement to "Dan Hamacheck, Inc., and to General Motors Acceptance Corporation;" the provisions in plaintiff's warranty of the truth of the information for obtaining credit, that the contract "may be assigned to General Motors Acceptance Corporation," and that any remittance or tender made except in cash will effect payment only to the extent of the cash finally collected or received; and the addressing of the form for an assignment, which was printed at the bottom of the contract, to General Motors Acceptance Corporation, clearly disclosed to the plaintiff and charged it with knowledge that that contract was to be assigned to the defendant. In addition, that, before the default

had occurred because of which the defendant subsequently seized the automobile, the plaintiff well knew that the contract had actually been so assigned to the defendant, is convincingly evidenced by the fact that on about February 23, 1933, it received defendant's statement that it still owed $685 to the defendant, and that the plaintiff then answered "Yes" to the defendant's question, "Are these figures correct?" Manifestly, in view of those facts and circumstances, the court could rightly conclude that the plaintiff, chargeable as it was in law with knowledge of the contents of the documents which it had signed (*Lefebvre v. Autoist Mut. Ins. Co.* 205 Wis. 115, 236 N. W. 684; *Knight & Bostwick v. Moore,* 203 Wis. 540, 234 N. W. 902), not only had knowledge that that contract was to be eventually assigned to the defendant, but that it also acquiesced in that assignment and the resulting right of the defendant to receive the payments in cash of the deferred instalments provided in that contract. Consequently, when the defendant in good faith, and in reliance upon those provisions, and plaintiff's apparent knowledge thereof and acquiescence therein, thereafter duly acquired that contract by the contemplated assignment thereof, and when the defendant subsequently, after the plaintiff had affirmatively acknowledged that the sum of $685 was owing thereunder to the defendant, exercised its rights to seize the automobile under the contract because of a default in making payment thereunder, the plaintiff certainly became estopped to claim that it was not a default under that contract because it was entitled to have its claim against Dan Hamacheck, Inc., under the advertising contract, set off against its obligations under the conditional sales contract. There is applicable under the facts and circumstances herein the proposition that:

"The general rule that an assignee acquires no greater rights than his assignor is subject to the qualification that the debtor may by his representations or conduct estop himself to set up against the assignee defenses which were available to him against the assignor." 5 C. J. p. 966, § 151.

See *Cowdrey v. Vandenburgh,* 101 U. S. 572, 25 L. Ed. 923; *Russell v. Turner,* 14 Ga. App. 344, 80 S. E. 731; *Fugate v. Hansford's Ex'rs,* 3 Litt. (Ky.) 262; *Follett v. Reese,* 20 Ohio, 546, 55 Am. Dec. 472; *Cox v. Elms,* 36 N. M. 31, 7 Pac. (2d) 617; *Wiggins Ferry Co. v. O. & M. R. R. Co.* 142 U. S. 396, 12 Sup. Ct. 188; *National Credit Co. v. Casco Co.* 173 Wash. 275, 22 Pac. (2d) 670. See also *Malas v. Lounsbury,* 193 Wis. 531, 214 N. W. 332 (dissenting opinion); and *Wisconsin V. T. Co. v. Schroeder & Son Co.* 214 Wis. 73, 77, 251 N. W. 218. Likewise, in view particularly of the fact that the plaintiff answered in the affirmative when the defendant inquired on February 23, 1933, whether the figures that $685 were still owing to it were correct, there is also applicable the principle that, if a party to a contract fails, upon inquiry by an assignee thereof, to disclose his equity against the assignor, or by word or act misleads the assignee in respect thereto, and the latter, in reliance thereon and in good faith, acts upon the information given or impression created by such party, he will be estopped from setting up his equity against the assignee. *Jones v. Hardesty,* 10 Gill. & J. (Md.) 404, 420, 32 Am. Dec. 180; *Lee v. Kirkpatrick,* 14 N. J. Eq. 264, 267; *McNeil v. Tenth National Bank,* 46 N. Y. 325, 7 Am. Rep. 341.

On the other hand, the court found and concluded that Dan Hamacheck, by inserting "$35 for 11 months and $335 for 1 month" into the blanks left in the printed contract for the "Schedule for other than equal monthly payments," intentionally changed the contract as originally signed, for the purpose of modifying its terms so as to make it acceptable for purchase or discount by the defendant; that the plaintiff had never agreed to make the eleven monthly payments of $35 and a lump sum payment of $335 for the twelfth month, and therefore the insertion constituted a material alteration; that Hamacheck had made that insertion without any express or implied authority of the plaintiff; and that therefore, as

that insertion was a material alteration, the contract was thereby rendered entirely void, and no right existed thereunder to repossess the automobile, upon the default in the payment of any instalment thereunder.

Although Hamacheck may have made that insertion after the plaintiff had signed the contract, and it may not have expressly authorized him to make it, it does not follow, under the evidence, that he did not have implied authority to thus fill in the blanks, which were expressly provided in the printed form for a schedule of twelve monthly payments. To begin with, the insertion made by Hamacheck is not necessarily repugnant to the preceding provision in the contract, that the balance of $720 was payable "in installments of $35, on the same day of each successive month, or as indicated in schedule of payment below, and commencing January 15th, 1933; and the final installment payable hereunder shall equal the amount of the deferred balance remaining due." · True, in so far as the insertion required the payment of $335 for the twelfth month, it would be at variance with that part of the preceding provision, which required the payment of $35 "in each successive month, . . ." if the latter were the entire provision on that subject. However, that was but part of a provision, which, when considered in its entirety, discloses that the direction in respect to the payment of $35 per month was not the complete or final requirement in that respect. On the contrary, that provision was expressly qualified by the clause, "or as indicated in schedule of payment below;" and also by the express requirement, that "the final installment payable hereunder shall equal the amount of the deferred balance remaining due." Thus, on the one hand, that qualifying clause clearly disclosed that a schedule of payments was to be inserted in the contract, and the blanks provided therein for that schedule plainly showed that it was contemplated that the schedule was to provide for the payment of twelve monthly instalments; and, on the other hand, the express requirement which followed provided definitely that

the final instalment payable under the contract should equal the amount of the deferred balance remaining due. Consequently, as there was an aggregate balance of $720 to be paid by instalments in the twelve months contemplated under the printed form for the schedule, but the final instalment was to equal the amount of the deferred balance remaining due, it was obvious, as a matter of simple mathematics, that, with the preceding instalments of but $35 per month, the twelfth or final instalment would necessarily have to be $335.

Under the circumstances, it is obvious that the blanks which were provided in the printed form for a schedule of twelve monthly payments were evidently intended to be filled in, and that, if that schedule was incomplete when plaintiff signed the contract, then Dan Hamacheck, as the person to whom it was intrusted by plaintiff, became impliedly authorized to make the insertion in those blanks in general conformity to the character of the instrument, which was presumably within the contemplation of the parties. In that respect the case clearly falls within the rule stated in *Kiker v. Broadwell,* 30 Ga. App. 460, 118 S. E. 759, that—

"Where a person intending to enter into a contract delivers a writing containing blanks evidently meant to be filled, this creates in the receiver an implied authority to complete the instrument by filling the blanks in the way apparently contemplated by the maker, with matter in general conformity to the character of the writing;" and the rule that "a principal may be, and frequently is, bound by an instrument in which blanks have been filled in an unauthorized manner, where, in a good-faith reliance thereon, third persons have acted in such a way as to be prejudiced if the instrument be held invalid." *J. R. Watkins Co. v. Keeney,* 52 N. D. 280, 201 N. W. 833, 836.

See *Friend v. Yahr,* 126 Wis. 291, 104 N. W. 997; *Smith v. Willing,* 123 Wis. 377, 382, 388, 101 N. W. 692; *Johnson v. Weed & Gumaer Mfg. Co.* 103 Wis. 291, 295, 79 N. W. 236; *Johnston Harvester Co. v. McLean,* 57 Wis. 258, 265, 15 N. W. 177; *Snyder v. Van Doren,* 46 Wis. 602,

1 N. W. 285; *Van Etta v. Evenson,* 28 Wis. 33, 37; *Bank of Pittsburgh v. Neal,* 22 How. (U. S.) 96, 16 L. Ed. 323, 326; *David Plaut Securities Co. v. Cooper* (Mo. App.), 258 S. W. 455; *Merchants' Nat. Bank v. Brastrup,* 39 N. D. 619, 168 N. W. 42.

It follows that the making of that impliedly authorized insertion by Dan Hamacheck did not render the contract void and unenforceable in the hands of the defendant; and that, as it, as the innocent assignee thereof, for value, was entitled thereunder to take possession of and sell the automobile upon plaintiff's default in the payment, there was no conversion thereof by the defendant. Consequently, the complaint should have been dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.