# CHARLES W. WESTON *et al.*

## *v.*

# HENRY C. MYERS.

1. CRIMINAL LAW — *no circulating medium allowed other than bills of the banks of this State.* A sutler in the army issued checks or tickets in this form: "Good for 50 cents; H. C. Myers, Sut.," which were indorsed by him " H. C. M.," and paid out for value, and received by others in the usual course of business. *Held*, that these instruments, not being intended to be used as a general circulating medium to mingle with the currency of the country, were not within the meaning of the act prohibiting any person from issuing or passing, &c., any bill of credit, bond, &c., "to be used as a general circulating medium, as, or in lieu of money or other currency, or intended by the makers thereof to be so used, other than the bills or notes of the banks of this State," and are not, therefore, void.

2. NEGOTIABLE INSTRUMENTS — *where no payee is named.* A *bona fide* holder of a promissory note or due-bill, in which the name of the payee has not been inserted, has a right to fill up the blank left for the payee's name with that of an indorser.

3. It is reasonable to infer an authority from the maker who has issued a note or due-bill for value, wherein no payee is named, and which is indorsed by the maker, to fill up the blank with the name of the maker, so as to make it an instrument payable to his own order.

4. So, in this case, the plaintiffs, who were the holders of these instruments for value, had a right to fill them up by inserting the words "to myself, or order," after the words "good for 50 cents."

5. INDORSEMENT IN BLANK — *may be filled up.* And the holders also had a right to fill out the blank indorsements with a direction to pay the sums mentioned to themselves.

6. BLANKS AS TO PAYEE'S NAME — *and indorsements ; immaterial.* The instruments, when filled up according to the holder's legal right, would have been valid obligations in form against the maker. The filling up of the blanks was a mere matter of form, and might have been dispensed with altogether.

7. A DUE-BILL IS ASSIGNABLE. A due-bill, under our statute, is assignable in the same manner as a promissory note.

8. SIGNATURE — *of its form or character, as regards its binding effect.* The instruments sued upon were indorsed with the initials of the maker, only, thus : "H. C. M.," and this was held sufficient. A person may become bound by any mark or designation he thinks proper to adopt, provided it is used as a substitute for his name, and he intends to bind himself thereby.

9. It makes no difference, so far as a party's liability is concerned, whether he writes his name in *script* or roman letters, or whether such letters are made with a pen or with type, or whether he prints, engraves, photographs or lithographs them, so long as he adopts and issues the signature as his own.

10. And having issued an instrument with such adopted signature, for value, he is estopped from denying its validity.

WRIT OF ERROR to the Circuit Court of Sangamon county ; the Hon. EDWARD Y. RICE, Judge, presiding.

This was an action originally instituted before a justice of the peace in Sangamon county, by Charles W. Weston and others against Henry C. Myers, to recover upon one hundred and ninety-eight printed instruments in the following form :

<blockquote>
"Good for 50 cents.

H. C. MYERS, Sut."
</blockquote>

which were indorsed in the handwriting of the defendant, "H. C. M."

The trial before the justice resulting in a verdict and judgment against the defendant, he took an appeal to the Circuit

Court, where the cause again came on for trial at the October Term, 1863, when it was shown that the checks or tickets which are the foundation of the suit, were issued by the defendant, and others acting under his authority. That said tickets were to be paid for by the persons to whom they were originally issued, though not having been issued by the defendant to the plaintiffs, but were received by them from third persons. The plaintiffs received these checks or tickets at their face in payment for goods, and in no other way. They were presented to the defendant for payment, which he refused to make, except in sutler's goods.

The defendant showed, upon cross-examination, that said tickets circulated in the military camp, where they were issued as and for money. The court refused to allow the instruments to go in evidence to the jury. A verdict was returned in favor of the defendant. The plaintiffs moved for a new trial, which was refused, and a judgment entered against them for costs. They thereupon sued out this writ of error.

The defendant insists that the instruments sued upon were properly excluded from the consideration of the jury, upon two grounds:

*First.* Because they were intended to be used as a general circulating medium in violation of the statute, and of public policy, and are therefore void.

*Second.* No payee is named in the instruments, and consequently, no action will lie thereon in the name of the plaintiffs. And in these propositions are involved the questions arising on the record.

Messrs. E. L. GROSS and E. B. HERNDON, for the plaintiffs in error.

1. The checks or instruments sued upon are not in fact, and do not purport to be, anything more than simple acknowledgments of indebtedness. As such, any holder who receives them for a consideration may sue upon them in his own name; and he may give them in evidence in support of a count upon an

account stated. Chitty on Bills, 558; *Fisher* v. *Leslie*, 1 Esp. 426; *Payne* v. *Jenkins*, 19 Eng. Com. Law, 404; Bayley on Bills, 5; *Childers* v. *Boulnois*, 16 Eng. Com. Law, 411.

2. These checks are identical in principle with the I O U of the English Law Reports, which, though not addressed to any one, will be evidence for the plaintiff if produced by him. The payee not being named, these checks do not come within our statute on negotiable instruments; therefore, the common law is still the rule that governs them. R. S. 1845, 384; Byles on Bills, 20; 40 Eng. Com. Law, 145; 39 id. 346; *Fesenmayer* v. *Adcock*, 16 Mees. & Wels. 448. Our statute on negotiable instruments is remedial, and not restraining. 11 Ill. 469.

3. A check payable to a fictitious person, or to a number, is, in judgment of law, payable to bearer, and any holder for value may recover upon it. *Willets* v. *The Phenix Bank*, 2 Duer, 121; *Vere* v. *Lewis*, 3 Durn. & East, 91; *Minot* v. *Gibson*, 51 Law Library, 5th series; Ross on Bills, 61; affirmed in the house of lords. This appears to be a leading case on this question.

4. It has already been decided that a bank check, payable to bearer, may pass by delivery without indorsement; and why not a check upon one's self, as well as on the bank? It will hardly be said that the check of A. upon B. is different in principle from a check by A. upon himself. *Munn* v. *Burch*, 25 Ill. 35. So, too, it has been decided that a coupon, payable to bearer, is admissible under the money counts to prove that the amount named therein is due to the holder. *Johnson* v. *County of Stark*, 24 Ill. 75.

5. A *bona fide* holder for a consideration, and without notice, is always protected. There was a valuable consideration in this case, both when the checks were issued by the defendant and when they were received by the plaintiffs. *Talock* v. *Harris*, 3 Durn. & East, 85.

6. These checks may be considered as payable to Myers himself; then, since he has indorsed them in blank, we may fill it up with an order, making them payable to the plaintiffs. In any view, the plaintiffs clearly have the right to use them as evidence.

Messrs. J. E. ROSETTE, HAY & CULLOM, and WM. H. HERN-DON, for the defendant in error.

The ticket or check on which this suit is brought is not a promissory note; it is not a bill of exchange; it is not a check. It lacks all the qualities of these instruments, as required by our statute. R. S. 1845, 384, § 3; Scates' Comp. 291–294.

These tickets were not intended by Myers to be used as a circulating medium, nor as money, nor as the representative of so much money. Myers never thought of such a thing when they were issued, nor at any other time. They were to be used merely for the convenience of Myers in his trade at Camp Butler, he at that time being post sutler at the camp; and they were to be paid in sutler's goods, at his counter in the camp, where he is ready and willing, and always has been, to pay them, and always has paid them when presented according to the agreement when they were issued. They bear evidence on their face that they were to be paid in sutler's goods, being issued by Myers and signed as sutler. It is an attempt to make him pay cash by plaintiff, which he (Myers) never agreed to do.

Being neither of these instruments, it is not assignable, and must stand alone as it was when it was issued by the defendant. Therefore, no persons but the parties to the original contract can either use them as evidence or sue them in their own names, as assignee, or bearer, or in any other manner. 3 Scam. 344. The precise question raised in this cause has been decided in the case of *Brown* v. *Gillman et al.*, 13 Mars. 158; also, *Douglass* v. *Wilkenson*, 6 Wend. 634, 637; *Prenitt* v. *Chapman*, 6 Ala. 86–89; Edwards on Bills, 131; *Minot* v. *Gibson*, 51 Law Library, 75, 85.

We think the above authorities abundantly sufficient to settle the question that the plaintiffs have no right to sue in their own names or recover as indorsees of the tickets or checks in question.

It is claimed that the tickets may be given in evidence under the common counts, especially on the account stated. If so, is each ticket a check, an account stated, or are all combined to be evidence to prove the statement of account? Such is not the law; to support such a count, the plaintiff must prove that there

was a demand on his side, which was acceded to by the defendant. There must be a fixed and certain sum admitted to be due, and the admission must have reference to past transactions between the parties to the suit. See 2 Greenl. Ev., 2d ed., p. 115, par. 126, and authorities there cited; 1 Archb. Nisi Prius, 271, 343, 344, and authorities there cited.

The proof in this case is in direct conflict with the above statement of the law. It shows that the tickets or checks were given, not to the plaintiff, but to other and different parties than the plaintiffs to this suit.

It is claimed that the tickets or checks are similar to the I O U of the English law. It will be seen, in looking through the cases cited, that the dispute in regard to the effect they should have as evidence was always confined to the parties in whose hands they were originally placed; and no cause has been shown where the I O U was sued on by a party not the original owner of the same, and to whom it was given. The court clearly gives out, as their opinion of the law, that third parties could not maintain a suit on such instruments in writing. Therefore, they have no application to this suit, and, in fact, the weight of their authority is against the plaintiffs' right to recover in this case. See authorities cited by plaintiffs.

Again, it is claimed that they are, in effect, the same as a check. The difference is clear, in this: a check must have three parties. It is a request by A. on B. to pay C. a certain sum of money therein stated, which it is supposed that A. has in the hands of B. for that express purpose. It can, therefore, make no difference to B. to whom he is to pay the money, and, in fact, it is none of his business to whom A. pays his money. It is B.'s duty to pay the money, without asking questions. The money being set apart for the use of A., and it being no difference to B. to whom he pays it, therefore any holder of the check has a right to demand payment from B., the money being placed in B.'s hands for that express purpose. This is not a case that has any analogy to the point in dispute, and the authorities have no application. I have reference to bank checks. Plaintiffs' authorities sustain this position.

It is said that these checks are to be regarded in the same light as a coupon. I apprehend that the court will not establish that principle. Coupons are, and have been, treated and acted upon as payable to bearer, because it is supposed that such was the intention of the parties who made them. It is supposed that the parties who owe the coupons have set apart a special and particular fund, out of which they are to be paid, and always have that fund ready to apply to the payment of that debt; and it makes no difference who presents the instrument. They are made payable to bearer, on the express condition, and for the express purpose, that they may pass by delivery *only*. Such is the law, well settled. And it is so from public policy and special statutes regulating such cases. See *Johnson* v. *County of Stark*, 24 Ill. 75.

A right of action accrues to no person but the parties to a contract, and then only in the manner pointed out by law; and the mere fact that he has taken an instrument of writing which is worthless, to himself, does not, and ought not, to bind any other person, notwithstanding he has paid value for the same.

It is said the checks may be considered as payable to Myers himself, and that he has indorsed them. The mere fact of indorsement presupposes that there was an instrument, which, before indorsement, was good in the hands of some person. Now, will it be contended that the mere pieces of paper, with the printing on them, would be good as against Myers or any other persons? Certainly not. The only thing that plaintiff claims to make them good is the fact that Myers had *written* his initials on the back of them. It is not the fact of printing, but the fact of signing, as plaintiff claims, that makes them of any kind of value more than any other piece of paper. Consequently they are not, nor cannot be, *checks* drawn on Myers himself, and indorsed by him, because there is no request to pay; there is but one signing. In order to be a check on himself, they must have been good as against himself, or some other person, before indorsement. Nothing but a *valid* and good instrument can be indorsed; therefore, these pieces of paper are, in the hands of Weston & Co., worthless pieces of paper.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

This is an action to recover the sums of money specified in a large number of printed instruments in the following form :

" Good for 50 cents.

"H. C. MYERS, Sut."

and were indorsed, in the handwriting of the defendant, " H. C. M." The plaintiffs proved the signature of the defendant on the back of each of the instruments; that they were issued by the defendant, and that he received value for them from the person to whom they were originally issued. It also appeared in evidence that the plaintiffs received these instruments in the usual course of business for goods sold and delivered, from persons other than the defendant, and that before the commencement of this suit they presented them to the defendant and demanded payment, which was refused. On the trial the court below excluded the instruments from the consideration of the jury. The exclusion of these instruments as evidence is sought to be sustained on two grounds :

First. That the instruments were intended to be used as a general circulating medium in violation of the statute and of public policy, and are therefore void.

Second. That no payee is named in the instruments, and, consequently, no action will lie thereon in the name of the plaintiffs.

The statute to which reference is made (Scates' Comp. 120) forbids " any person to emit, issue, utter or pay out, pass or receive in payment, any bill of credit, bond, promissory note, bill of exchange, order, draft, certificate of deposit, written instrument, &c., to be used as a general circulating medium, as, or in lieu of money or other currency, or intended by the makers thereof to be so used, other than the bills or notes of the banks of this State.

There can be no just pretense in this case that these instruments were intended as a general circulating medium to mingle with the currency of the country. They were not issued to be

used as a general circulating medium, and are not, therefore, within the meaning of the statute. The defendant, by issuing the instruments for value, adopted the printed signature thereon as his own, and became thereby bound in the same manner, as if it had been written by himself. He thereby asserted to whomever might receive the instruments, that the signature was binding upon him, and he is not at liberty now to retract the assertion. We think it makes no difference, so far as the defendant's liability is concerned, whether he wrote his name in *script* or roman letters, or whether such letters were made with a pen or with type, or whether he printed, engraved, photographed or lithographed them, so long as he adopted and issued the signature as his own. It is true, that a written signature in script, may be a safer mode of subscribing one's name, but where a party has adopted a signature made in any other mode, and has issued an instrument with such adopted signature, for value, he is estopped from denying its validity.

A *bona fide* holder of a promissory note, or due-bill, in which the name of the payee has not been inserted, has the right to fill up the blank left for the payee's name, with that of an indorser. It is reasonable to infer an authority from the maker who has issued a note or due-bill, for value (wherein no payee is named, and which is indorsed by the maker), to fill up the blank with the name of the maker, so as to make it an instrument payable to his own order. *Laurence* v. *Mabry*, 2 Dev. 473; Story on Prom. Notes, § 39; *White* v. *Ver. & Mass. R. R. Co.*, 21 How. 575; 1 Pars. on Notes and Bills, 33.

We think the plaintiffs had a right to fill up the printed instruments, by inserting the words " to myself or order " after the words " good for 50 cents." A due-bill, under our statute, is assignable in the same manner as a promissory note. In *Brown* v. *Butcher's, &c., Bank*, 6 Hill, 443, it was held that a person may become bound by any mark or designation he thinks proper to adopt, provided it was used as a substitute for his name, and he intended to bind himself thereby. In that case the indorsement of the defendant was the figures 1, 2 and 8, written in pencil by him; and although it appeared that he could

write, the indorsement was held to be sufficient. In *Geary* v. *Physic,* 5 B. & C. 234, Lord TENTERDEN said, the law of merchants requires, only, that an indorsement of bills of exchange should be in writing, without specifying the manner in which the writing is to be made. In *Merchants' Bank* v. *Spicer,* 6 Wend. 443, a check was indorsed by the defendant with his initials "P. W. S.," and it was regarded as sufficient. See also *Palmer* v. *Stevens,* 1 Denio, 471. We think the indorsement of these instruments was sufficient. The plaintiffs had a right to fill out the blank indorsements with a direction to pay the sums mentioned in the instruments to themselves. The instruments, when filled up according to the plaintiffs' legal right, would have been valid obligations in form against the defendant. The filling up of the blanks was a mere matter of form, and might have been dispensed with altogether. *Gillham* v. *State Bank of Illinois,* 2 Scam. 247.

We were referred in argument to *Brown* v. *Gilman,* 13 Mass. 158, and other cases, but we think they are not applicable, for the reason that, at common law under which they arose, due-bills were not assignable as they are under our statute. The instruments in those cases could not be made assignable, and were therefore held to be only evidence of an indebtedness between the original parties. The court below erred in excluding the instruments, and its judgment must therefore be reversed and the cause remanded.

*Judgment reversed.*