JUST PANTS, Plaintiff-Appellee, v. JOEINE WAGNER, Defendant-Appellant.

First District (2nd Division)   No. 1—91—2767

Opinion filed May 18, 1993.

Schwartz & Rubin, of Chicago (John B. Schwartz, of counsel), for appellant.

Rudnick & Wolfe, of Chicago (Marc P. Seidler, Fredric A. Cohen, and Bruce C. Nelson, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Joeine Wagner appeals from the the circuit court's grant of summary judgment in favor of plaintiff Just Pants, an Illinois limited partnership, on the issue of whether an arbitration award was properly executed. Defendant also contends that because the court erred in holding that the award was enforceable, its subsequent confirmation of that award was necessarily infirm.

In November 1978, defendant and plaintiff entered into an agreement whereby defendant became a franchisee of plaintiff, which owned the franchise of an established national retail clothing store chain. Under the agreement, defendant would be entitled to open and to operate a "Just Pants" clothing store in a shopping mall in Athens, Georgia, and to use plaintiff's trade name and trademarks. Pursuant to the agreement, she also subleased the Athens store from plaintiff. A later amendment to the existing contract authorized defendant in 1985 to open a second store in a Dalton, Georgia, shopping center, subject to the same terms as applied to the first store. The contract expressly provided that any disputes arising therefrom would be resolved in accordance with the provisions of the United States Arbitration Act (9 U.S.C. §1 *et seq.* (1988)), and the applicable rules of the American Arbitration Association (AAA).

In 1988, defendant, without explanation, stopped making payments to plaintiff for royalties, advertising fees and rent for the sublease on her two stores; thus, by October 1989, she was in arrears to plaintiff for more than $63,000. Plaintiff, pursuant to the franchise agreement, filed a demand for arbitration with AAA on July 12, 1989, seeking an adjudication of defendant's liability and a recompense of the debt owed as well as attorney fees and costs. On August 16, 1989, AAA named William Caples as the arbitrator of the dispute and asked the parties to advise it of a mutually agreeable date upon which the arbitration proceeding could be held. The parties chose October 6, 1989, as the hearing date. On August 24, 1989, AAA informed them that their hearing would be held on the agreed-upon date, and that notice of an intent to postpone must be given at least 48 hours in advance of the time set for the hearing. Nonetheless, on October 5, the day before the hearing was to commence, defendant phoned Caples, requesting a postponement of the next day's proceeding or, alternatively, that the hearing be conducted telephonically. Caples denied both requests.

On the morning of October 6, 1989, defendant's attorney again phoned Caples asking that he delay the hearing. Caples, citing defendant's lack of diligence in securing a postponement, again denied the

request, and pursuant to Rule 30 of AAA's rules of commercial arbitration, acceded to plaintiff's demand to conduct the hearing *ex parte*. After listening to testimony which encompasses over 100 pages of transcript and accepting substantial documentary evidence, Caples closed the hearing on October 23, 1989. Subsequently, on November 2, 1989, defendant petitioned over plaintiff's objection to reopen the proceeding, which Caples denied.

In mid-November 1989, Caples informed AAA that he was nearing completion of his decision and that he would be sending it forthwith. When the award did not arrive at AAA's New York office, an official there telephoned Caples to inquire into the source of the delay. Caples advised the official that he had rendered a decision in favor of plaintiff in the amount of $81,142 and that his memorandum of the final award would be mailed to AAA. On November 17, 1989, Caples, as promised, mailed to AAA a copy of an unsigned 11-page memorandum of his award which was attached to a signed cover letter. In the cover letter, Caples identified the parties to the dispute and, *inter alia*, referred to the attached memorandum as being his decision with regard to the case.

AAA's standard procedure upon the filing of an award by one of its arbitrators is to complete a "golden rod" which notifies AAA's central office which party in a proceeding held under its auspices has prevailed, and also to transcribe the arbitrator's decision onto one of AAA's standard award forms which is then sent to the parties. Here, the official who had previously spoken to Caples sent to AAA's central office the "golden rod" naming plaintiff as the prevailing party in this action. He also ensured that the standard form expressed Caples' resolution of the dispute. He sent seven copies of the completed form to Caples for his signature, but Caples died before receiving them.

Plaintiff, seeking to enforce the award rendered by Caples, filed a complaint in the circuit court seeking a declaratory judgment that the Caples memorandum was enforceable as an award and asked the court to confirm it pursuant to section 9 of the United States Arbitration Act (9 U.S.C. §9 (1988)), and section 11 of the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 111). On February 26, 1991, plaintiff moved for summary judgment on both counts. Defendant moved to dismiss the complaint via a section 2—619 motion (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), asserting that the award was never signed and, therefore, since a signed award is a statutory prerequisite to its subsequent confirmation, the court lacked jurisdiction to confirm it. However, defendant filed nothing in direct response to the motion for summary judgment. The court denied defendant's

motion to dismiss and instead granted plaintiff's motion for summary judgment. It found that the most equitable resolution to the controversy was to decree that the written award combined with the signed cover letter met the AAA's requirement that an award must be written and signed. Accordingly, the court entered judgment in favor of plaintiff and confirmed Caples' award *nunc pro tunc* as of July 24, 1989, after which defendant filed a timely notice of appeal.

The sole question before us is whether a letter subscribed by the arbitrator and attached to the memorandum of his award explaining the basis of his decision, and which fully resolved the proceeding before him but which was not subscribed, constituted a "written, signed award" for the purposes of the applicable AAA rule pertaining to commercial arbitration. Defendant, adopting an exceedingly formalistic approach, argues that because the memorandum of decision was not subscribed by the arbitrator before his death, it cannot be considered a "written, signed award" as contemplated by Rule 42 of the AAA's rules for commercial arbitration. Thus, under her approach, the award was never executed, and accordingly, a new proceeding must be held before a new arbitrator. Since the memorandum at issue does have the arbitrator's typewritten name affixed at its end, she implicitly asserts that for the purposes of Rule 42, the "signed" requirement can be satisfied only by a subscription made by the arbitrator in his own hand.

Plaintiff asks this court to affirm the trial court's confirmation of the award and supports its request by contending that "signed" for the purposes of an arbitration award should be viewed as being no different than it is for the purposes of the statute of frauds and, therefore, either the typewritten name at the end of the memorandum of decision or the handwritten signature on the cover letter to the AAA constitutes a proper execution of the award.

At the outset, we note that the case at bar is squarely on point with *In re Arbitration* (1972), 6 Ill. App. 3d 286, 285 N.E.2d 480 (*Del Bianco*), where the defendants in an action seeking, *inter alia*, to confirm an arbitration award argued that an award rendered in the form of a letter to the AAA was a legal nullity. The court found that a letter signed by the rendering arbitrator, which recited only the names of the parties in the proceedings, the finding of the arbitrator, and the amount of the award, sufficed as an official pronouncement of the award, and that the award was adequately executed. It reasoned that arbitration proceedings are valued for their informality and their expedient resolution of disputes, and that, therefore, to require a more formal decision would militate against the very reason arbitra-

tions are recognized as an alternate means of dispute resolution. As a result, the *Del Bianco* court rejected the defendants' contention that the trial court erred by confirming this method of handing down an AAA award. The court found "[t]he recitations in the letter constituted a sufficient statement of the award." *Del Bianco*, 6 Ill. App. 3d at 296, 285 N.E.2d at 486.

As a companion argument, defendant here urges, in effect, that the letter Caples mailed along with his written decision to the AAA's New York office in order to notify it of his disposition of the instant dispute is insufficient as a matter of law to constitute a valid execution of an award. However, as was true in *Del Bianco*, the cover letter combined with the written decision fully informed the AAA who the parties to the dispute were, who had prevailed in the dispute, and the amount the victor would recover. Furthermore, Caples' letter was subscribed "Bill," in what is indisputably the arbitrator's handwriting. The *Del Bianco* court found that these four factors constituted a sufficient statement of the award, and defendant in the case at bar offers nothing which persuades that we should not hold likewise.

Moreover, assuming *arguendo* that we were to ignore the clear applicability of *Del Bianco*, the trial court's decision may be affirmed on the very ground it asserted while rendering its decision. In granting plaintiff's motion for summary judgment, the trial court, after noting that it sat in equity, decreed that "[t]he fairest decision is that Mr. Caples' award[,] combined with his signed memorandum[,] satisfy the prerequisite for the written signed award required." This is merely another way of stating the equitable maxim "that equity considers that as done which ought to be done." *Cesena v. Du Page County* (1991), 145 Ill. 2d 32, 38, 582 N.E.2d 177, 180; *Ward v. Sampson* (1946), 395 Ill. 353, 366-67, 70 N.E.2d 324, 331; *Kohl v. Montgomery* (1942), 379 Ill. 579, 41 N.E.2d 762; *Edward Don & Co. v. Ufland* (1968), 98 Ill. App. 2d 49, 56, 240 N.E.2d 725, 730 (citing the maxim in order to remove the taint on a stock certificate which bore only the facsimile signature stamp of the certificate's former owner which was affixed after his death).

Applying this doctrine to the facts of the case *sub judice*, the trial court recognized that the cover letter and the written decision of the arbitrator constituted his final word on the dispute, and that there was nothing which even hinted that he had any intent to alter his determination. In *The Del-Mar-Va* (D.C. Va. 1944), 56 F. Supp. 743, an admiralty action, the United States sought a "re-trial de novo" because, *inter alia*, prior to his death, the trial judge prepared only an informal memorandum of decision which outlined the basis of his ear-

lier oral order, rather than a signed formal writing stating his findings of fact and conclusions of law as mandated by Admiralty Rule 46½. The successor judge predicated his denial of the government's motion mainly on the fact that the informal memorandum, although not in the form dictated by the rules of the admiralty court, "embodied specific findings on all the material facts in the cases, and set out adequate conclusions on all the important questions of law involved therein," and thus "[it] was a decision of all the issues involved in the cases." (*The Del-Mar-Va*, 56 F. Supp. at 748.) The court, therefore, disallowed the government's motion for a trial *de novo* and adopted as its own the findings contained in the informal memorandum.

Similarly, Caples filed his unsubscribed decision which both he and the AAA understood to be his final word on the subject. The AAA was merely to transpose the decision onto the standard form which it employs to memorialize arbitration awards and return it to him for his signature. The AAA was then to inform the parties of the resolution of the dispute by sending each a copy of the form. Like the unsigned, informal memorandum in *The Del-Mar-Va*, Caples' unsubscribed memorandum contained his findings on the specific facts of the dispute between the parties, his determination as to which party was to recover, what the extent of the recovery would be, and a recitation of his conclusions of law. To borrow from the court in *The Del-Mar-Va*, Caples' memorandum was "a decision of all the issues involved in [the arbitration proceeding]" (*The Del-Mar-Va*, 56 F. Supp. at 748); accordingly, we hold that it comprises a final arbitration award in favor of plaintiff which was properly confirmed by the trial court.

Furthermore, unlike the government in *The Del-Mar-Va*, defendant does not urge that the deceased fact finder had some basis to change his decision, nor, for that matter, if such were to be asserted, would the facts of this appeal allow for such a suggestion. The document at issue was clearly final and no party to this dispute had moved to supplement the record prior to his death as the government had attempted to do in *The Del-Mar-Va*. Rather than suggesting that Caples' memorandum of decision was actually only a draft copy subject to later revision, defendant claims that for the purposes of all arbitration awards, formalism should govern. She would have this court pay homage to the remotest possibility that Caples could have changed his mind at any point prior to affixing his name to the document and that therefore an award should not be considered duly executed until the arbitrator places his signature on it.

In order to agree with defendant, we would first have to accept the gloss she places on the word "signed" for the purposes of the AAA internal rule which governs the form of an award. Rule 42 of the commercial arbitration rules of the AAA, entitled "Form of Award," mandates that "[t]he award shall be in writing and shall be signed by a majority of the arbitrators." This is essentially the equivalent of section 8 of the Uniform Arbitration Act, which has been adopted in Illinois (Ill. Rev. Stat. 1989, ch. 10, par. 108) and which controls the requisite form of the award for arbitrations conducted under its auspices. We note that the word "signed" has not, as yet, been interpreted in the specific context of either the AAA's rules or section 8 of the Uniform Act.

Defendant maintains that in construing the word "signed," this court must do so as strictly as permissible because the right to confirm arbitration awards did not exist at common law, but is merely the creature of statute. (Citing *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 538 N.E.2d 524; *Evans v. Corporate Services* (1990), 207 Ill. App. 3d 297, 302-03, 565 N.E.2d 724, 728.) However, we deem her proposed constraint inapplicable since the parties had agreed that any arbitration which resulted from their contractual relations be governed not by Illinois law, but rather by the United States Arbitration Act (9 U.S.C. §9 (1988 & West Supp. 1990)), and the applicable rules of the AAA. Section 9 of the Federal act is silent on the question of whether an arbitration award must be signed. That requirement, for the purposes of this appeal, arises only from Rule 42 of the AAA. Consequently, we are not construing a legislative enactment, but merely the rules of a private organization; therefore, the holdings of *Warren Township* and *Evans* are inapplicable to the case at bar. In reality, since Illinois law favors arbitration (*Pillott v. Allstate Insurance Co.* (1977), 48 Ill. App. 3d 1043, 1047, 363 N.E.2d 460), Rule 42 must be given as broad a construction as possible. *Cf. Merritt v. Merritt* (1850), 11 Ill. 565 (holding that arbitration awards should be construed with an eye toward upholding their validity whenever practicable).

Although never expressly saying so, defendant hinges her appeal on the belief that "signed" must be construed solely as the equivalent of "subscribed." Under her construct, for an award to be valid, the rendering arbitrator must have actually put pen to paper and subscribed his name by hand to the document he intends to be his award. In this respect, however, defendant occupies a position of lonely eminence, for no authority, in any context, has held that hers is the only permissible construction of the term. For instance, Black's Law Dictionary, upon which

we have relied since time immemorial (see, *e.g.*, *People v. Stephens* (1973), 12 Ill. App. 3d 215, 217-18, 297 N.E.2d 224, 226 (adopting Black's definition of "signature" to hold that a search warrant is authentic even though it is only stamped by a magistrate rather than being subscribed)), defines "signed" as "[i]nclud[ing] any symbol executed or adopted by a party with present intention to authenticate a writing." (Black's Law Dictionary 1239 (5th ed. 1979); see also Ill. Rev. Stat. 1991, ch. 26, par. 1—201(39) (defining "signed" for the purposes of the Commercial Code with the same meaning elucidated above).) In a fuller explication, Black's defines "sign" as:

> "To affix one's name to a writing or instrument, for the purpose of authenticating or executing it, or to give effect as one's act. To attach a name or cause it to be attached to a writing by any of the known methods of impressing a name on paper. To affix a signature to; to ratify by hand or seal; to subscribe in one's own handwriting. To make any mark, as upon a document, in token of knowledge, approval acceptance, or obligation." Black's Law Dictionary 1239 (5th ed. 1979).

Finally, in the context of contracts and the statute of frauds, "signed" has eternally been understood to encompass more than the narrow definition of a subscription in the handwriting of the author of the instrument. Indeed, a writing has been considered "signed" for the purpose of the statute even if it merely contains something which manifests that the instrument has been executed or adopted by the party to be charged by it. *Weston v. Myers* (1864), 33 Ill. 424, 432-33 ("We think it makes no difference, so far as defendant's liability is concerned, whether he wrote his name in *script* or Roman letters, or whether such letters were made with a pen or with type, or whether he printed, engraved, photographed or lithographed them, so long as he adopted and issued the signature as his own [ ]") (emphasis in original); *McConmell v. Brillhart* (1856), 17 Ill. 354, 360; see also *Monetti, S.P.A. v. Anchor Hocking Corp.* (7th Cir. 1991), 931 F.2d 1178, 1182 (stating that " 'signed' in statute-of-frauds land is a term of art, meaning executed or adopted by the defendant" and therefore, holding the defendant's initials on a writing sufficient to satisfy the statute); 80 C.J.S. *Signatures* §7 (1953) ("Generally, in the absence of a statute otherwise providing, a signature may be affixed by writing by hand, by printing, by stamping, or by various other means").

In sum, in a variety of contexts, the law has consistently interpreted "signed" to embody not only the act of subscribing a document, but also anything which can reasonably be understood to symbolize or manifest the signer's intent to adopt a writing as his or her own and be bound by

it. This may be accomplished in a multitude of ways, only one of which is a handwritten subscription. (See *First National Bank v. Husted* (1965), 57 Ill. App. 2d 227, 205 N.E.2d 780.) Applying that definition of "signed" to Rule 42, it is clear that the arbitrator's name at the end of the memorandum, which was typewritten on the memo prior to his death, can serve to manifest his intent that the 11-page memorandum constitutes his final word on the subject and that he adopted it as his opinion of the proper resolution of the dispute between the parties. Accordingly, the typewritten name at its end can execute and give legal effect to the memorandum, for we cannot agree with defendant that such an endorsement by an arbitrator of his award is to be accorded no more importance than if it had been accomplished by means of a smoke blanket.

Defendant protests that the looser definition of "signed" is permissible in commercial agreements and for the purposes of the statute of frauds because, in those settings, the "signature substitutes" (as she refers to them) serve only to show that the signatory intends to enter into a specific transaction, and that once the statute is satisfied, it is still incumbent on the other party to establish the existence of an enforceable agreement. Defendant contrasts that situation with the purpose of arbitration, which is intended to be a final adjudication of a dispute between the parties, and therefore, the signature requirement is intended as a beacon, informing all that the dispute has been fully settled and that further proceedings on the subject are now barred by *res judicata*. This argument is, however, unavailing.

First, it glosses over the fact that under the Federal Arbitration Act, an award need not be signed nor must it even be in writing to be validly executed. (9 U.S.C. §9 (1988).) Certainly, unsigned awards rendered pursuant to Federal law are still intended to be final resolutions of disputes on the merits and, once rendered, will have a *res judicata* effect on the parties and the issues addressed in the arbitration. See *Davis v. Chevy Chase Financial Ltd.* (D.C. Cir. 1981), 667 F.2d 160; *Albin Stevedore Co. v. Central Rigging & Contracting Corp.* (9th Cir. 1962), 308 F.2d 347; *Marshall v. Coach House Restaurant, Inc.* (S.D.N.Y. 1978), 457 F. Supp. 946.

Moreover, defendant's "need for certainty" argument ignores an obvious analogy to practices which we have found to conform with Supreme Court Rule 272 (134 Ill. 2d R. 272), which provides in pertinent part:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by [the judge or if a circuit court rule requires the prevailing party to

submit a draft order], the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed." (134 Ill. 2d R. 272.)

The motivation for the rule is to fix precisely the date of final judgment for the purposes of appeal. (*Stoermer v. Edgar* (1984), 104 Ill. 2d 287, 472 N.E.2d 400; *West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880.) However, under Rule 272, no judgment, even one announced from the bench in the parties' presence, is final until the court complies with its procedural commands. (*Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 470 N.E.2d 290; *In re Marriage of Roberts* (1980), 84 Ill. App. 3d 538, 406 N.E.2d 1.) Surely, the same need for certainty which defendant claims dictates that a signature be subscribed by the arbitrator as the *sine qua non* of a valid arbitration award applies at least equally to the signature requirement of Rule 272. However, we have rejected the contention that for purposes of the rule, a judgment must actually be subscribed by the trial judge in order to be final and appealable. In *Robertson v. Robertson* (1984), 123 Ill. App. 3d 323, 462 N.E.2d 712, the reviewing court found that the mere initials of the trial judge satisfied the signature requirement of Rule 272. Since a judge's initials affixed to the end of a judgment impart approximately the same degree of finality and certainty as an arbitrator's typewritten name affixed to the last page of his 11-page decision, we follow the lead of *Robertson* and attach no significance to the method employed to "sign" the arbitration award.

Defendant, without regard or reference to the clear applicability of *Robertson*, which rejected formalism in the perfectly analogous setting of Rule 272, argues that form in this context should prevail over substance, suggesting that any means of executing an award other than by a handwritten subscription would dim the clear bright-line test which informs when an award is final. In advancing her argument, she cites previous cases wherein a reviewing court reversed the confirmation of arbitration awards, and the reason for reversal touched upon whether the awards were signed. She implicitly contends that those courts recognized the necessity of allowing form to overcome substance and that therefore this court should follow suit.

However, her reliance on any precedent in support of this assertion is either unwarranted or misconceives the lesson of those earlier cases. Furthermore, defendant omits any mention of the myriad of cases which have rejected her assertion or have expressly held that the exaltation of form has no place in arbitration. (See *Kemner v. District Council of Painting & Allied Trades No. 36* (9th Cir. 1985), 768 F.2d 1115 (refusing to set aside an award merely because it was not in a specified form);

*Griffith Co. v. San Diego College for Women* (1955), 45 Cal. 2d 501, 289 P.2d 476 (rejecting form over substance argument); *Creter v. Davies* (1954), 30 N.J. Super. 60, 103 A.2d 392 (affirming award signed by only two of three arbitrators, given no appearance of impropriety), *aff'd* (1954), 31 N.J. Super. 402, 107 A.2d 17; *Winston v. Eisenberg* (1962), 17 A.D.2d 998, 998-99, 233 N.Y.S.2d 778, 779 (finding valid an award signed by only two of three arbitrators and stating "we think that the technical errors [missing signature of third arbitrator] did not significantly affect the result so as to require a reversal of the [trial court's confirmation of the award]"); *Virginia Beach Board of Realtors, Inc. v. Goodman Segar Hogan, Inc.* (Va. 1983), 299 S.E.2d 360 (rejecting contention that an award rendered by a five-member panel is invalid because it was signed only by the panel's chairman); *Forrer v. Coffman* (1873), 64 Va. (23 Gratt) 871 (rejecting as mere form the failure of the arbitrators to affix a seal to their name and accordingly affirming their award); see also 5 Am. Jur. 2d *Arbitration & Award* §125 (1962) ("But mere informalities in preparing or signing an award will not ordinarily be sufficient ground for declaring it invalid if it reflects the intent of the arbitrators").) Over 100 years ago, the court in *Forrer* recognized:

> "The tendency of the modern decisions is to disregard, as far as possible, mere matters of form, and to give force, conclusiveness and effect to awards where no corruption or misconduct on the part of the arbitrators is charged, and no fraud or deceit imputed to the parties." (*Forrer*, 64 Va. (23 Gratt) at 877.)

As this tendency seems to have become more acutely prevalent in these more modern times, we deem it necessary to remind defendant of the admonition given to us by one of our most venerable jurists decades ago, that "[t]he law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." (Cardozo, J., in *Wood v. Duff-Gordon* (1917), 222 N.Y. 88, 91, 118 N.E. 214, 214.) Since defendant does not allege that the arbitration proceeding below was tainted by corruption or misconduct, we perceive no impediment to our giving "force, conclusiveness and effect" to the award by affirming its confirmation by the trial court.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.