# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1208

CENTRAL ILLINOIS LIGHT COMPANY,

*Plaintiff-Appellant,*

*v.*

CONSOLIDATION COAL COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-1477—**Michael M. Mihm**, *Judge.*

_____

ARGUED SEPTEMBER 11, 2003—DECIDED NOVEMBER 17, 2003

_____

Before FLAUM, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges.*

POSNER, *Circuit Judge.* The district judge granted summary judgment for the defendant, Consolidation Coal Company, in this diversity breach of contract suit brought by Central Illinois Light Company (CILCO). 235 F. Supp. 2d 916 (C.D. Ill. 2002). The judge's ground was that CILCO had failed to comply with the Uniform Commercial Code's statute of frauds (codified in Illinois as 810 ILCS, ch. 5). Consolidation had been selling coal to CILCO for several years under one-year contracts. Between September 2000

and June 2001 the parties engaged in protracted negotiations for a contract to succeed their 2000 contract, which was due to expire on the last day of that year. CILCO contends that in December, in the course of the negotiations, it made an oral contract with Consolidation to buy from the latter 1.5 million tons of coal in 2001 and 2002 at a total price of $34 million.

The negotiations involved the exchange of many documents, but documents that *merely* evidence negotiations do not satisfy the statute of frauds. *Lee v. Voyles*, 898 F.2d 76, 78-79 (7th Cir. 1990) (interpreting Illinois UCC law); *General Trading Int'l, Inc. v. Wal-Mart Stores, Inc.*, 320 F.3d 831, 836 (8th Cir. 2003); *Dutchess Development Co. v. Jo-Jam Estates, Inc.*, 521 N.Y.S.2d 262, 263 (App. Div. 1987); *Howard Construction Co. v. Jeff-Cole Quarries, Inc.*, 669 S.W.2d 221, 227-28 (Mo. App. 1983). There has to be "some writing sufficient to indicate that a contract for sale has been made," provided it has been signed by the party (or the party's agent) against whom the contract is sought to be enforced. UCC § 2-201(1).

It is true that the contracting parties in this case are "merchants," defined as those "who deal in goods of the kind" involved in the transaction at issue or who hold themselves out "as having knowledge or skill peculiar to the practices or goods involved in the transaction." UCC § 2-104(1). (As White and Summers explain, "the first phrase captures the jeweler, the hardware store owner, the haberdasher, and others selling from inventory. . . [while] the second description, having to do with occupation, knowledge, and skill, includes electricians, plumbers, carpenters, boat builders, and the like." 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 9-7, p. 513 (4th ed. 1995).) In a contract between merchants, the requirement of a signature is relaxed; it is enough "if within a reasonable time" of the making of the alleged contract "a writing in confirmation of

the contract and sufficient against the sender is received and the party receiving it has reason to know its contents," unless he objects in writing within ten days. UCC § 2-201(2). But signature, as we'll see, is not a serious issue in this case.

A further qualification—one that *is* potentially important to this case—is that a signed document is not necessarily disqualified because it preceded the making of the contract. *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1182-83 (7th Cir. 1991). The clearest case would be one in which the party sought to be held to the contract (that is, the party asserting the statute of frauds defense) had made a written offer which the offeree had accepted in writing explicitly stating that he was accepting all the terms in the offer. The statute of frauds defense would fail even though the only writing signed by the party sought to be held to the contract had preceded the making of the contract, which would have occurred only on acceptance. *Huntington Beach Union High School District v. Continental Information Systems Corp.*, 621 F.2d 353, 356 (9th Cir. 1980). But that case is to be distinguished not only from one in which the acceptance is oral, so that there is no written confirmation of the existence of a contract (we thus disagree with the suggestion in *Farrow v. Cahill*, 663 F.2d 201, 206-10 (D.C. Cir. 1980), that a written offer can be the confirmation that satisfies the statute of frauds even when the acceptance is oral), but also, and more directly pertinent to this case, from a case involving "notes made in preparation for a negotiating session,. . .lest a breakdown of contract negotiations become the launching pad for a suit on an alleged oral contract." *Monetti, S.P.A. v. Anchor Hocking Corp., supra*, 931 F.2d at 1182.

The critical point—issues of signature, promptness, and temporal sequence to one side—is that the documentation presented by the party seeking to demonstrate compliance

with the statute of frauds must "indicate" or "confirm" the existence of a contract. CILCO seems to think that it is enough that the documentation is consistent with the existence of a contract—that it does not negate the contract's existence—but that can't be right. The writing must, remember, be "sufficient to indicate" that there *is* a contract. *Howard Construction Co. v. Jeff-Cole Quarries, Inc., supra*, 669 S.W.2d at 227-28. Its existence must, at the very least, be more probable than not. See 1 *White & Summers, supra* § 2-4, pp. 64-65. Otherwise the statute of frauds would have no application to a case in which the parties had exchanged documents in the course of negotiations; and that is not the law. E.g., *Monetti, S.P.A. v. Anchor Hocking Corp., supra*, 931 F.2d at 1180, 1182-83; *Howard Construction Co. v. Jeff-Cole Quarries, Inc., supra*, 669 S.W.2d at 227-28; *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 889 (E.D. Ky. 2003). A mere written offer, without written proof of acceptance, would then satisfy the statute of frauds, and that is not correct either. *Monetti, S.P.A. v. Anchor Hocking Corp., supra*, 931 F.2d at 1182; *R.S. Bennett & Co. v. Economy Mechanical Industries, Inc.*, 606 F.2d 182, 184-86 (7th Cir. 1979) (interpreting Illinois UCC law). The documentation must enable an inference to be drawn that there *was* a contract, though once that has been established the parties are free to present oral evidence of the contract's terms, *Guel v. Bullock*, 468 N.E.2d 811, 814-15 (Ill. App. 1984); *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1034 (5th Cir. 1982)—all but the quantity term, which must be stated in the writing that establishes compliance with the statute of frauds. UCC § 2-201(1).

The principal document on which CILCO relies to show that an oral contract for the sale to it of 1.5 million tons of coal was indeed made in December of 2000 is an internal Consolidation document created that month entitled "Coal

Sales Invoicing System Order Print." The document has the form of an invoice and contains most of the detail that an invoice for a two-year sale of 1.5 million tons of coal would be expected to contain, except the price for the second year's shipments. The document states that it was created by Debbie Womack and "released to system by" Beverly Wilson. Neither of these individuals is otherwise identified. The district judge thought that without further identification of them it could not be said that the document had been signed by an agent of Consolidation. That was not a realistic assessment. It is obvious that the people who prepare internal documents of this sort are employees, and hence agents, of Consolidation. The judge was right that oral testimony cannot be used to supply the information required for compliance with the statute of frauds. *Monetti, S.P.A. v. Anchor Hocking Corp.*, *supra*, 931 F.2d at 1181; *Bazak Int'l Corp. v. Mast Industries, Inc.*, 535 N.E.2d 633, 635 (N.Y. 1989). That would be bootstrapping. But what is obvious, like what is admitted, UCC § 2-201(3)(b); *URSA Farmers Cooperative Co. v. Trent*, 374 N.E.2d 1123, 1125 (Ill. App. 1978); *DF Activities Corp. v. Brown*, 851 F.2d 920, 923-24 (7th Cir. 1988) (interpreting Illinois UCC law), need not be documented. The purpose of the statute of frauds is to protect against the uncertainty of oral testimony, and if there is no possible uncertainty there is no work for the statute to do.

The problem with the invoice is not that it wasn't signed by an agent, for it is obvious as we have said that Womack and Wilson were agents of Consolidation. The absence of a handwritten signature is not a problem either. *Weston v. Myers*, 33 Ill. 424 (1864); *Just Pants v. Wagner*, 617 N.E.2d 246, 250-51 (Ill. App. 1993); *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295-96 (7th Cir. 2002) (interpreting Illinois UCC law); *Barber & Ross Co. v. Lifetime Doors, Inc.*, 810 F.2d 1276, 1280

(4th Cir. 1987). But all the invoice shows is that Consolidation prepared an invoice consistent with what it hoped would be a contract. The invoice was never sent— which, if anything, is evidence that there was no contract, at least no contract containing terms consistent with the invoice.

The invoice loses all possible significance, moreover, when placed in its documentary context. Beginning in September 2000, three months before the invoice was created, and continuing until the end of May of the following year, the parties exchanged at least eleven drafts of a possible contract, with many different terms, though the quantity remained at or close to 1.5 million tons over two years. Negotiations collapsed in June when Consolidation, having encountered production difficulties at its mine, told CILCO it would contract to sell it only 600,000 tons. (CILCO regards that statement as a repudiation, and hence breach, of the oral contract made the previous December.) Against this background it is apparent that the invoice was wishful thinking rather than evidence of an oral contract.

It is true, as CILCO points out, that a binding contract, oral or otherwise, can come into being before all the details of the parties' contractual relationship are worked out. *Quake Construction, Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 993-94 (Ill. 1990); *Dawson v. General Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992) (Illinois law); E. Allan Farnsworth, "Precontractual Liability and Preliminary Agreements: Fair Dealing and Failed Negotiations," 87 *Colum. L. Rev.* 217, 253-63 (1987). This is especially likely when the business relationship is complex and the parties have come to trust each other through previous dealings (and there were previous dealings here). It may then be in the parties' mutual interest to exchange binding commitments on the essentials of their deal so that they have at

least a rough idea of where they stand and can make their plans accordingly, and to commit to negotiate in good faith, the details of the deal at a later date: in effect to agree to agree. Duties to bargain in good faith are not empty, as we know from labor law; and they can be voluntarily assumed and enforced. But no document indicates that our two parties agreed, whether in an oral contract made in December 2000 or at any other time, to agree. On the contrary, CILCO itself—oddly—points to an email from Consolidation in February 2001, two months after the invoice and the so-called oral contract, in which Consolidation's salesman described a draft from CILCO as a great "starting point." And in another email, sent the same day between the same individuals, the salesman said, "OK, let's try again."

The question is not how close the parties were to agreement, but whether there was an agreement. It could, as we have said, have been an agreement to agree, but no document indicates that. The reference to "starting point" could mean merely the starting point of the process of drafting the formal written contract confirming an oral contract, but there is no documentary evidence for this interpretation. CILCO seems to think that if writings establish price and quantity, there *must* be a contract—as if the statute of frauds displaced the requirement of agreement. Often price + quantity = contract. When the parties are dealing in standard goods, what more is needed? But coal comes in many varieties; size, plus ash and sulfur content, require attention, as do the adoption and wording of clauses covering taxes, environmental costs (who bears the costs of new regulations?), delays in shipment, and so on. These items, which may be more important in the case of coal than base price is, are what these parties could not agree on.

In principle, of course, and often in practice, the question whether the statute of frauds has been satisfied is separable

from the question whether there was a contract. There could be an oral contract that, were it not for the statute of frauds, would be provable by oral testimony; or the statute of frauds might be satisfied yet a full trial show that really there was no contract—that the document evidencing it was contradicted by more persuasive evidence, oral or written. But in this case the questions have tended to merge, with the parties in the briefs and at argument frequently sliding from the question of compliance with the statute of frauds to the question whether there was a contract. A telling piece of evidence against the inference that there was, much emphasized by Consolidation, is the statement by its salesman at his deposition that in early 2001 (after the famous invoice) CILCO was still "out looking at alternative fuels and trying to determine whether or not they could get coal in there from someone else cheaper" than from Consolidation. CILCO argues that this is not admissible evidence because how could Consolidation's salesman know what CILCO was doing? But that is a poor argument because it's the business of a salesman to know what alternatives his customer is exploring; that is something that is within a salesman's personal knowledge, rather than being hearsay. See *Kansas City Power & Light Co. v. Ford Motor Credit Co.*, 995 F.2d 1422, 1432 (8th Cir. 1993). CILCO denies that the salesman's testimony is accurate but has offered no contrary evidence (denials in pleadings and briefs are not evidence), and so it stands uncontradicted for purposes of summary judgment. It is further evidence that months after the invoice CILCO did not consider itself bound to any contract with Consolidation.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*